J-S10004-18
J-S10005-18
J-S10006-18
J-S10007-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| NICOLE NOELLE ELINSKY | : | |
| Appellant | : | No. 1912 EDA 2017 |

Appeal from the Judgment of Sentence February 15, 2017
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0002383-2015

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| NICOLE NOELLE ELINSKY | : | |
| Appellant | : | No. 1913 EDA 2017 |

Appeal from the Judgment of Sentence February 15, 2017
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0002853-2015

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| NICOLE NOELLE ELINSKY | : | |
| Appellant | : | No. 1914 EDA 2017 |

Appeal from the Judgment of Sentence February 15, 2017
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0001053-2016

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
NICOLE NOELLE ELINSKY :
:
Appellant : No. 1915 EDA 2017

Appeal from the Judgment of Sentence February 15, 2017
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0001143-2016

BEFORE: BOWES, J., OLSON, J., and NICHOLS, J.

MEMORANDUM BY BOWES, J.: **FILED JULY 17, 2018**

Nicole Noelle Elinsky appeals from the aggregate judgment of sentence of three to six years incarceration, imposed following her convictions at four separate dockets for DUI-related offenses. At No. 2016-1053, Appellant challenges the denial of her suppression motion seeking application of **North Dakota v. Birchfield**, 136 S.Ct. 2160 (2016) (holding warrantless blood tests cannot be justified as a search incident to arrest). Appellant also challenges the discretionary aspects of her aggregate sentence. We affirm.[1]

We briefly state the underlying facts. Appellant committed the first DUI on May 2, 2015 (No. 2015-2383). The officer asked for her consent to draw blood, which she declined. Appellant was informed of the consequences of

---

[1] Appellant lodged a total of four notices of appeal, one at each criminal docket, which we have consolidated.

refusal, and continued to refuse. She was later charged with, *inter alia*, refusing blood testing. Regarding her next DUI, on May 10, 2015 (No. 2015-2853), Appellant initially refused, but ultimately relented and consented to a blood draw, which resulted in DUI charges.

As these cases proceeded on their course, Appellant was arrested for a third DUI, which occurred on December 26, 2015 (case 2016-1053). Appellant initially pleaded guilty to the two May DUIs on January 5, 2016, and sentencing was deferred pending a pre-sentence report. While awaiting sentencing, Appellant committed her fourth DUI, occurring March 14, 2016.[2]

On June 23, 2016, the United States Supreme Court issued **Birchfield**. Due to that case, and other defects in the initial guilty pleas, Appellant's guilty pleas to the May DUI charges were withdrawn and amended. Appellant pleaded guilty to amended charges on August 5, 2016. On that same date, Appellant also pleaded guilty to the March 14, 2016 DUI. Sentencing was deferred.

At the remaining case, relating to the December 26, 2015 DUI, Appellant filed a motion to suppress based on **Birchfield**, which the trial court denied following a hearing. On January 12, 2017, the parties proceeded to a

---

[2] Appellant was informed of the consequences of refusal and consented to the blood draw. The Commonwealth agreed that the blood evidence was inadmissible.

- 3 -

stipulated non-jury trial, and the trial court found Appellant guilty of, *inter alia*, DUI with a BAC exceeding .16.

On February 15, 2017, the trial court sentenced Appellant at all four cases, and imposed an aggregate term of three to six years incarceration. Following the denial of post-sentence motions, Appellant filed timely notices of appeal in all four cases, which we have consolidated. Appellant complied with the order to file a concise statement, and the trial court issued a thorough opinion. The matter is ready for review of Appellant's claims:

> I. Did the trial court err in denying Appellant's motion to suppress regarding the results of the blood test performed pursuant to a warrantless search of Appellant's blood? Specifically, did the trial court err in finding that consent was given voluntarily for the warrantless blood draw and the use of the results obtained from the search?
>
> II. Did the trial court abuse its discretion when it imposed an aggregate sentence of three (3) years to six (6) years on Criminal Docket Numbers CP-15-CR-1053-2016, CP-15-CR-1143-2016, CP-15-CR-2383-2015, and CP-15-CR-2853-2015?

Appellant's brief at 5.

The **Birchfield** issue applies only to Appellant's charges at No. 2015-1053. We apply the following standard of review.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as

- 4 -

remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Raglin*, 178 A.3d 868, 871 (Pa.Super. 2018).

Additionally, where the voluntariness of consent to search is at issue,

the following principles guide our review.

A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies. One such exception is consent, voluntarily given. The central Fourth Amendment inquiries in consent cases entail assessment of the constitutional validity of the citizen/police encounter giving rise to the consent; and, ultimately, the voluntariness of consent. Where the underlying encounter is found to be lawful, voluntariness becomes the exclusive focus.

*Commonwealth v. Strickler*, 757 A.2d 884, 888–89 (Pa. 2000) (citations

and footnotes omitted). The voluntariness standard for consent is less

stringent than the tests governing waiver of other constitutional rights. *Id*.

at 889 n.3 ("[W]hile the waiver analysis appropriately applies to safeguard

constitutional guarantees involving the preservation of a fair trial of criminal

defendants, it does not pertain to the wholly different protections of the Fourth

Amendment[.]") (citations omitted). The test is objective in nature, with

some subjective considerations. **Strickler**, **supra** at 901 ("Additionally, although the inquiry is an objective one, the maturity, sophistication and mental or emotional state of the defendant (including age, intelligence and capacity to exercise free will), are to be taken into account.") (citations omitted).

The facts relevant to the **Birchfield** issue were set forth at the suppression hearing as follows. On December 26, 2015, Officer Matthew Grandizio responded to a reported accident in a parking lot. Officer Grandizio spoke to Appellant, who was driving one of the vehicles. The officer observed indicia of intoxication, and, following Appellant's unsatisfactory performance on field sobriety tests, arrested her for DUI. Appellant was transported to the hospital in handcuffs, her blood was drawn, and testing revealed that her BAC level was .194. Officer Grandizio testified that upon arrest he advised Appellant of the process going forward, which included his request for a blood draw. Once they arrived at the hospital, the officer again informed her that he "need[ed] a sample of your blood." N.T. Suppression, 12/20/16, at 16. Appellant did not balk, complain, or otherwise question the procedures, and consented to the blood draw. Critically, the officer did not read Appellant the then-standard implied consent form, which set forth the pre-**Birchfield** understanding of the consequences attached to refusal, nor did he otherwise discuss with her the consequences of refusal.

Appellant also testified. She stated that she did not think she had a choice in the matter, due to her prior DUI arrests. As a result of those incidents, she was familiar with the implied consent form and the penalties for refusing. Furthermore, Appellant noted that she had, in fact, refused to provide a blood sample during a prior DUI arrest and was charged with refusal. Therefore, while Appellant consented to the blood draw, she maintained that her "consent . . . was not voluntarily tendered as it was tainted by her knowledge of the enhanced penalties related to refusal to submit to chemical testing." Motion to Suppress, 12/7/16, at 2. This argument is continued on appeal.

The trial court opinion provides an extensive analysis, which the Commonwealth adopts. Commonwealth's brief at 14. That analysis rests on two points. First, the court concluded that Appellant's prior experience with the implied consent form, and the fact that she was previously charged with refusal, "tainted" her later interaction with Officer Grandizio, but that the passage of time served to purge the taint. Thus, "the police officer who initiated the blood draw request on December 26, 2015 did not exploit the prior illegality in order to obtain [Appellant]'s consent[.]" Trial Court Opinion, 8/16/17, at 21.

Next, the trial court concluded that the remaining question was whether Appellant validly consented to the search, and, examining the totality of the

- 7 -

circumstances, determined that her consent was not tainted by her knowledge of the implied consent warnings.  We quote the trial court's opinion:

> We note that there is no Pennsylvania case law directly on point supporting or opposing [Appellant]'s theory. However, analogizing [Appellant]'s case to others in which subsequent searches are preceded by unconstitutional law enforcement conduct we note that there is authority for the proposition that taint from the prior unlawful conduct may dissipate and become so attenuated that a subsequent valid search, or, in a different context, a subsequent valid confession after a first un-**Mirandized** interrogation, is not necessarily precluded simply because the [Appellant] was subjected previously to some improper government conduct.
>
> We find that the passage of seven (7) months' time, the fact of a different jurisdiction, a different officer, the absence of the offensive [implied consent] warnings, the fact that the "misconduct" at issue, the former provision of the [implied consent] warnings, was at the time a requirement of Pennsylvania law and not an error that arose by virtue of imprudent or improper actions of the police and that the police officer who initiated the blood draw request on December 26, 2015 did not exploit the prior illegality in order to obtain [Appellant]'s consent, and that the [Appellant], as we will discuss below, gave her unqualified and volitional consent to the search are sufficient to demonstrate that the connection between the prior illegality (the provision of [implied consent] warnings seven (7) months earlier) and the challenged evidence has become so attenuated as to dissipate any taint that might, arguably, have otherwise existed and that, as we will discuss below, the BAC evidence at issue *sub judice* resulted from an intervening independent act of free will.

Trial Court Opinion, 8/16/17, at 19-21.

The trial court then proceeded to examine whether Appellant's consent was voluntary in light of the totality of the circumstances, summarizing its findings as follows:

The factors that weigh in favor of concluding that [Appellant]'s consent was not voluntary include that she was in police custody when she was asked to consent to the blood test, that she was not advised of her right to refuse, and her prior experience with the [implied consent] warnings. The factors that weigh in favor of concluding that [Appellant]'s consent was voluntary include the fact that seven (7) months had passed since her last DUI experience; she was in a different jurisdiction from her earlier DUI experiences; she was interacting with different officers than she had during her previous DUI experiences; the officers on December 26, 2015 did not read to [Appellant] the [implied consent] warnings or connect her refusal to any type of criminal or civil penalty; [Appellant] did not inquire about possible penalties linked to refusal or express to the officers in any way that she did not wish to consent or was hesitant about the process; the entire interaction between [Appellant] and the officers was cordial and polite with [Appellant] described by the officers as very cooperative and pleasant . . . .

. . . .

The factors demonstrating that [Appellant]'s consent to the DUI blood test on December 26, 2015 was voluntary far outweigh the limited factors relied upon by the [Appellant] to suggest that her consent was involuntary. Consequently, we conclude, as we did at the close of the Suppression Hearing held on December 20, 2016, that the Commonwealth had met its burden to prove by clear and convincing evidence that [Appellant]'s consent to the chemical test of her blood for DUI purposes on December 26 2015 was voluntarily given under the totality of the circumstances. Accordingly, we denied [Appellant]'s suppression motion.

Trial Court Opinion, 8/16/17, at 33-34 (paragraph break added).

Our standard of review requires that we accept the trial court's credibility determinations. The trial court accepted her testimony that her consent in this instance was motivated by knowledge of the consequences for refusing, and balanced that knowledge against other factors.

- 9 -

Preliminarily, we disagree with the trial court's analysis regarding "taint" and whether that taint was purged by, *inter alia*, the passage of time and the fact that a different officer was involved. A taint analysis necessarily involves an act that was unlawful. Here, the trial court refers to the prior warnings as the relevant unlawful act that tainted the later interactions, but the fact is that the warnings were not unlawful when issued. Thus, Appellant's knowledge of the legal consequences if she were to refuse on the day of her arrest was not "tainted" by her prior experience; her knowledge was objectively correct. Therefore, the court erred when it stated that "the police officer who initiated the blood draw request on December 26, 2015 did not exploit the prior illegality[.]" Trial Court Opinion, 8/16/17, at 21. Since there was no prior illegality to exploit, this type of taint analysis is inappropriate.[3]

Simultaneously, the fact that Officer Grandizio did not inform Appellant of the consequences of refusal on the day in question is highly relevant, as there is a temporal element involved. In **Commonwealth v. Haines**, 168 A.3d 231 (Pa.Super. 2017), we remanded for an evidentiary hearing where the record was unclear as to whether the appellant consented before or after being told the penalties for refusing:

---

[3] We note that Appellant's suppression motion uses the word "taint," but in the context of arguing that her consent was coerced because she knew what would happen if she refused the request. Appellant did not refer to taint in the legal sense discussed by the trial court.

- 10 -

We agree that **if** Haines validly consented **before** being informed that he faced enhanced criminal penalties for failure to do so, then his consent would not be tainted by the warning and the blood test results would be admissible. **See Birchfield**, 136 S.Ct. at 2185–86. If, however, he did not consent until after Sergeant Dehoff informed him that he would face enhanced criminal penalties if he refused to consent, then the trial court did not necessarily err in granting his motion to suppress the test results. **Id.**

**Id**. at 236 (emphasis in original).

The trial court herein effectively applied **Haines** by finding that Appellant validly consented before any mention of the enhanced penalties that would apply if she refused. However, the critical distinction is that, in this case, Appellant already knew the consequences of refusal.[4] The trial court largely dispensed with the need to address that wrinkle by applying a purge analysis, which we have rejected *supra*. Thus, we are required to answer a question not addressed by **Haines**: Does **Birchfield** apply if the arrestee has explicit knowledge[5] of the consequences for refusal and consented as a result of that knowledge, despite the fact the officer did not directly threaten those same penalties?

_____

[4] There is no indication in **Haines** that the driver was previously read an implied consent form or, like Appellant herein, had been charged with more severe offenses due to a prior refusal.

[5] It is more accurate to state that Appellant was aware of the probable consequences, not the definitive. It is possible, for example, that the officer would have requested a breath test instead of a blood test.

- 11 -

We find that Appellant's consent was voluntary within the meaning of the Fourth Amendment. *Birchfield* did not foreclose a finding that a consensual blood draw was constitutionally valid even when the warnings were issued. The case referred to a partially inaccurate warning form which advised the driver that his license could be suspended if he refused. The High Court remanded for a hearing to determine if his consent was voluntarily given. While that remand did not involve a criminal sanction, that instruction implicitly rejects the notion that even actually invalid warnings are automatically coercive.

Additionally, we have addressed subjective beliefs as it bears upon consent in related circumstances involving post-*Birchfield* DUIs. In *Commonwealth v. Miller*, --- A.3d ----, 2018 WL 2057002 (Pa.Super. 2018), we examined a claim wherein the defendant asserted that he had been previously been arrested for DUI, and therefore believed that he would face increased criminal penalties for refusal. The officer informed Miller of the correct post-*Birchfield* consequences. The trial court granted suppression, and we reversed, determining that the consent was voluntarily given:

> Second, Appellee avers that he subjectively believed he would face increased criminal penalties if he refused a blood draw. Appellee avers that the last time he was arrested for DUI, prior to the Supreme Court of the United States' decision in *Birchfield*, he was read the DL–26 form. [T]he DL–26 form included a warning that failure to submit to a blood draw would subject a defendant to enhanced criminal penalties. Appellee, therefore,

- 12 -

> argues that the trial court properly considered his subjective belief that enhanced criminal consequences attached to the refusal to consent to a blood draw.
>
> Appellee's argument fails in light of our Supreme Court's decision in ***Commonwealth v. Strickler***, 563 Pa. 47, 757 A.2d 884 (2000). In ***Strickler***, our Supreme Court explained that, while a defendant's subjective belief regarding his or her ability to refuse to consent to a search may be considered as part of the totality of the circumstances, it is the police officer's express warnings which are most important when evaluating subjective belief. ***See id.*** at 901. In other words, incorrect subjective beliefs that are contradicted by a police officer's actual statements to a defendant diminishes the weight a trial court may place on the defendant's errant subjective belief.

***Id***. at *2.

This case differs from ***Miller*** in two material respects. First, the blood draw in this case occurred pre-***Birchfield***. Second, it involves Appellant's subjective knowledge of the consequences, owing to Appellant's own history, which involved prosecution for refusal. However, we believe those are distinctions without a difference. In ***Miller***, we stated that the police officer's conduct is the primary focus, and we find that the same is true here. Officer Grandizio asked Appellant to provide a blood sample, and she agreed. He did not threaten or coerce her by informing her of enhanced criminal penalties in the event she declined consent. While it is true that the machinery of the **State** stood poised to impose additional penalties, the **officer** did not threaten or coerce Appellant. ***See Commonwealth v. Ennels***, 167 A.3d 716, 724 (Pa.Super. 2017) ("***Birchfield*** makes plain that **the police** may

not **threaten** enhanced punishment for refusing a blood test in order to obtain consent; whether that enhanced punishment is (or can be) ultimately imposed is irrelevant to the question whether the consent was valid.") (second emphasis in original, citation omitted). We find that the primary focus must be on what the officer said and did.

Relatedly, we note that Appellant's outcome would effectively reward persons such as herself, who have previously run afoul of the law. **See Miller**, **supra** at \*3 ("Repeat DUI offenders, owing to past legal transgressions, are not entitled to a benefit that would be unavailable to first-time DUI offenders."). A first-time offender who consents before being told the consequences has no valid **Birchfield** claim. **Haines**. Prior violations of the law do not, of course, diminish Appellant's Fourth Amendment protections, but injecting subjective considerations into the voluntariness inquiry necessarily provides little guidance for a police officer requesting consent. Officer Grandizio had no duty to challenge Appellant's consent, yet, according to Appellant's argument, he was required to tell her the consequences of refusal, despite her consent, to ensure that some subjective belief on her part did not motivate her consent. In this respect, the United States Supreme Court has rejected the notion that the prosecution must establish that the subject of a search knew he had a right to refuse. The Court noted the problems with this approach:

- 14 -

>[It] would, in practice, create serious doubt whether consent searches could continue to be conducted. There might be rare cases where it could be proved from the record that a person in fact affirmatively knew of his right to refuse—such as a case where he announced to the police that if he didn't sign the consent form, 'you (police) are going to get a search warrant; or a case where by prior experience and training a person had clearly and convincingly demonstrated such knowledge. But more commonly where there was no evidence of any coercion, explicit or implicit, the prosecution would nevertheless be unable to demonstrate that the subject of the search in fact had known of his right to refuse consent.

*Schneckloth v. Bustamonte*, 412 U.S. 218, 229–30 (1973) (footnote omitted). The same point applies herein: the prosecution would **never** be able to demonstrate that Appellant validly consented to a blood draw. It may well be that her prior knowledge is why she consented, but there are other possibilities. Perhaps she sought to curry favor with the officer, or perhaps she felt remorse at having committed so many DUIs in such a short timespan and was willing to accept the consequences. The officer did not know why she agreed, and the Fourth Amendment did not require him to elicit an explanation. We find that her prior knowledge is not dispositive, and is merely one factor to consider.[6] We agree with the trial court's analysis with respect

---

[6] Unlike the reasonable person test for purposes of the seizure inquiry, which presupposes an innocent person and is an objective inquiry, the consent test asks whether Appellant herself felt compelled to consent. Thus, the test permits subjective considerations, as noted *supra*. **See Commonwealth v. Strickler**, 757 A.2d 884, 901 (Pa. 2000) (maturity, sophistication, mental or

to the balance of the totality of the circumstances, and adopt its analysis as our own, which is summarized. **See** Trial Court Opinion, 8/16/17, at 29-36. We thus agree with the balance of the trial court's analysis, set forth *supra*, regarding the totality of the circumstances inquiry. We therefore agree that her consent was voluntary.

We now address Appellant's challenge to the discretionary aspects of her sentence. Such appeals are not of right, and an appellant must invoke our jurisdiction by satisfying a four-part test. We examine:

_____

emotional state, age, intelligence, among other considerations). Those subjective factors, however, are at least objective in nature in the sense their existence can be measured and considered. We quote the following observation from the United States Court of Appeals for the Tenth Circuit:

> But even assuming some subjective characteristics are relevant to the validity of Mr. Zapata's consent, we reject the notion that his attitude toward police, from whatever source, can constitute such a relevant subjective characteristic. While such attributes as the age, gender, education, and intelligence of the accused have been recognized as relevant, **see  Schneckloth v. Bustamonte**, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973), an intangible characteristic such as attitude toward authority is inherently unverifiable and unquantifiable.

**United States v. Zapata**, 997 F.2d 751, 759 (10th Cir. 1993) (some citations omitted).

That Appellant had prior experience with the enhanced penalties form is objectively provable, but the effect it had on her thinking is inherently unverifiable. We therefore find that her knowledge is but one factor in the totality of the circumstances analysis.

- 16 -

> (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Radecki**, 180 A.3d 441, 467 (Pa.Super. 2018) (citation omitted, alterations in original).

Appellant filed a timely notice of appeal, preserved her claim in a motion to reconsider, and her brief included a separate statement. We find, however, that Appellant has failed to present a substantial question. Her statement reads:

> The sentence fashioned by the court does not address Appellant's rehabilitative needs as required by 42 Pa.C.S.A. §9721(b). Although the court certainly considered the protection of the public, the court did not address Appellant's rehabilitative needs as required by 42 Pa.C.S.A. §9721(b). Other than incarceration, the court's sentence does not confront the alcoholism at the core of the criminal offenses. The court's sentence does not meet Appellant's treatment and rehabilitative needs.

Appellant's brief at 16.

This cursory statement does not meet the applicable standard. We determine whether a substantial question exists on a case-by-basis. The appellant must advance "a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing

process." ***Radecki***, ***supra*** at 468 (citation omitted). The invocation of talismanic phrases cannot satisfy the substantial question requirement. Appellant herein claims that the trial court failed to consider her rehabilitative needs, but such a claim does not present a substantial question. ***See Commonwealth v. Griffin***, 65 A.3d 932, 937 (Pa.Super. 2013). Additionally, Appellant alleges that a litany of mitigating factors warranted a lesser sentence. However, "This Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." ***Commonwealth v. Matroni***, 923 A.2d 444, 455 (Pa.Super. 2007) (quoting ***Commonwealth v. Bullock***, 868 A.2d 516, 529 (Pa.Super. 2005)). We therefore find that Appellant has failed to present a substantial question.

Even if we were to find a substantial question, it is clear that Appellant is not entitled to relief. She asserts that the trial court did not consider her rehabilitation needs and did not "confront the alcoholism at the core of the criminal offenses." Appellant's brief at 37. She notes the traumatic circumstances of her childhood, sexual abuse inflicted upon her at age fourteen, and physical ailments requiring multiple surgeries. These facts were presented to the trial court, which clearly weighed them in fashioning its sentence:

I have to consider her rehabilitative needs. I have to consider the

guidelines. I obviously have to consider the mandatory provisions that all these cases have. And then I have to consider the factors in the sentencing code and balance the background, character and circumstances of this defendant with the circumstances of the crime, whether there is a need to incarcerate her to prevent future offenses by her, as well as the possibility of her rehabilitation. I considered and read the PSI. I read everything that defense counsel provided me.

It's a very unusual case to have this many DUIs coming from one person at one time. It's a rarity in my time on the bench. In doing the balancing, I'm going to stay within the standard range of the guidelines. I imagine I could easily find aggravation due to the circumstances here. I also I imagine, if I did the balancing, considering her difficult life, as I did read, and how that has impacted her, it's obvious it had a negative impact on her. But what's been exhibited here is she's dangerous to the community and herself, repetitive drinking and driving pattern established here. Whether she's successful in rehabilitation, time will tell. She obviously made efforts as evidenced by what was provided to the Court by defense counsel. She's severely in need of treatment. She committed some of these offenses while on bail, while awaiting sentencing. I think it indicates the degree of her problems. Her life at the time here seemed to be out of control. She was spinning wildly. The pattern here is dangerous to the community.

N.T., Sentencing, 2/15/17, at 34-36.

The trial court did not doubt that Appellant's history was partially to blame for her repeated drinking. However, there was a clear need to balance her rehabilitative needs against the safety of the community. As the Commonwealth noted, Appellant had been convicted of a total of seven DUI offenses at the time of sentencing. Appellant repeatedly endangered her life and the lives of others by continuing to drink and drive, and she committed

two DUIs while awaiting sentencing on other DUIs. It is clear that the trial court considered Appellant's arguments as warranting a lesser sentence, and we have no license to reweigh its balancing. We would find no abuse of discretion.

Judgment of sentence affirmed.

Judge Nichols joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/18

- 20 -

s:\admin\sarcione\Elinsky Nicole Direct Appeal 1925a.docx

RECEIVED

AUG 18 2017

PUBLIC DEFENDER

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS

vs. : CHESTER COUNTY, PENNSYLVANIA

NICOLE ELINSKY : NOS. 15-CR-0001143-2016;
　　　　　　　　　　　　　　　 15-CR-0001053-2016;
　　　　　　　　　　　　　　　 15-CR-0002853-2015;
　　　　　　　　　　　　　　　 15-CR-0002383-2015

: CRIMINAL ACTION—LAW

*Nicholas J. Casenta, Jr., Esquire, Chief Deputy District Attorney, for the Commonwealth*
*Maria T. Heller, Esquire, for the Defendant*

## OPINION *SUR RULE* 1925(a)

Before this Honorable reviewing Court is Defendant Nicole Elinsky's timely direct appeal from the Judgment of Sentence entered on February 15, 2017. Although Defendant was sentenced on February 15, 2017, Defendant filed a timely post-sentence Motion to Reconsider/Modify Sentence on February 24, 2017, which we denied by Order dated May 16, 2017, after conducting an evidentiary hearing. Defendant's Notice of Appeal followed on June 15, 2017, thirty (30) days after the date on which we denied her post-sentence motion. Because Defendant filed her Notice of Appeal within thirty (30) days of our denial of her post-sentence motion, Defendant's Notice of Appeal is timely. *See* Pa. R.A.P. 903(a)("Except as otherwise prescribed by this rule, the notice of appeal required by Rule 902 (manner of taking appeal) shall be filed within 30 days after the entry of the order from which the appeal is taken."); Pa. R.Crim.P. 720(A)(2)(a)("If the defendant files a timely post-sentence motion, the notice of appeal shall be filed: [ ] within 30 days of the entry of the order deciding the motion."); *Commonwealth v. Borrero*, 692 A.2d 158, 159 (Pa. Super. 1997)("If post-sentence motions are timely filed, . . . the

~ 1 ~

judgment of sentence does not become final for purposes of appeal until the trial court disposes of the motion, or the motion is denied by operation of law.").

The above-captioned matters constitute the last four (4) of a lifetime accrual of seven (7) DUI convictions for this Defendant, who is in her mid-thirties. (Sentencing Transcript, 2/15/17, N.T. 3; Post-Sentence Motion Hearing Transcript, 3/20/17, N.T. 2, 21). Of the three (3) DUI convictions preceding the above-captioned matters, two (2) were within the "look-back" period of 75 Pa. C.S.A. § 3806(b). (Post-Sentence Motion Hearing Transcript, 3/20/17, N.T. 2). However, she has seven (7) convictions overall.

The first two cases that are part of this appeal involve Defendant's arrests for DUI's occurring on May 2, 2015 (No. 15-CR-0002383-2015) (Sadsbury Township) and May 10, 2015 (No. 15-CR-0002853-2015) (East Brandywine Township), both of which were committed by the Defendant while she was on supervision for a DUI that occurred in January of 2015 in the State of Minnesota. (Original Guilty Plea Colloquy Hearing, 1/5/16, N.T. 2, 4, 5, 6, 11, 13). In connection with these two (2) DUI offenses at docket numbers 15-CR-0002383-2015 and 15-CR-0002853-2015, both of which occurred prior to the United States Supreme Court's decision in *Birchfield v. North Dakota*, 136 S.Ct. 2160 (U.S. N.D. June 23, 2016), the police read to Defendant PennDOT's Form DL-26, which contains the standard "*O'Connell* warnings",[1] before requesting Defendant to submit to a BAC blood test. With respect to the offense occurring on May 2, 2015, at docket number 15-CR-0002383-2015, Defendant refused to comply with the Officers' request to submit to a blood test. With respect to the offense which occurred on May 10, 2015, at docket number 15-CR-0002853-2015, Defendant, according to the Affidavit of

---

[1] *Commonwealth v. Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873 (Pa. 1989).

Probable Cause, initially refused but shortly thereafter changed her mind and submitted to the BAC blood test. Defendant posted bail on each of these cases.

While on bail for the aforementioned offenses, Defendant was again arrested for DUI on December 26, 2015 (No. 15-CR-0001053-2016) (West Goshen Township), again prior to the United States Supreme Court's *Birchfield, supra* decision. With respect to this arrest, the police asked Defendant to submit to a BAC test without reading to her PennDOT's Form DL-26 or otherwise reciting the Implied Consent/*O'Connell* warnings. Defendant consented to having her blood drawn. The test yielded a BAC of .19. Defendant posted bail for this offense.

On January 5, 2016, Defendant tendered open guilty pleas to docket numbers 15-CR-0002383-2015 and 15-CR-0002853-2015, the May 2, 2015 and May 10, 2015 offenses, respectively. Sentencing was deferred until March of 2016 pending completion of a Pre-Sentence Report. Defendant did not inform the Court, the Assistant District Attorney, the Bail Agency, nor even her own counsel at this time of her December 26, 2015 (sixth) arrest for DUI.

In February of 2016 Defendant failed to appear for the Preliminary Hearing scheduled on her December 26, 2015 DUI arrest.

On March 14, 2016, Defendant was yet again arrested for her final DUI at docket number 15-CR-0001143-2016 (Embreeville PSP; South Coatesville Borough). Again, this arrest occurred, as did the previous ones, prior to the United States Supreme Court's *Birchfield, supra* decision. With respect to this arrest, the police did read to Defendant the Implied Consent/*O'Connell* warnings and Defendant again consented to have her blood drawn. In addition to her latest DUI arrest, Defendant did not appear for

~ 3 ~

sentencing in March of 2016 on docket numbers 15-CR-0002383-2015 and 15-CR-0002853-2015. A Bench Warrant was issued for her arrest. A Return of Warrant was executed on March 17, 2016, indicating that Defendant was incarcerated in Chester County Prison, having been unable to post bail on her March 14, 2016 (seventh) DUI offense.

On April 19, 2016 the Commonwealth filed a Rule 582 Notice consolidating the above-captioned matters for trial.

On June 23, 2016, the United States Supreme Court issued *Birchfield v. North Dakota*, 136 S.Ct. 2160 (U.S. N.D. June 23, 2016), in which it held, among other things, that a State could not constitutionally criminally penalize a person for exercising their right to refuse to consent to a warrantless blood draw. *Id.*

Because of the United States Supreme Court's *Birchfield, supra* decision which was issued on June 23, 2016, and other defects in Defendant's initial guilty plea colloquies, Defendant was permitted to re-plead at docket numbers 15-CR-0002383-2015 and 15-CR-0002853-2015.

On August 5, 2016, Defendant tendered open guilty pleas at docket numbers 15-CR-0002383-2015 (the May 2, 2015 DUI), 15-CR-0002853-2015 (the May 10, 2015 DUI), and 15-CR-0001143-2016 (the March 14, 2016 DUI).

At docket number 15-CR-0002383-2015, the May 2, 2015 offense, Defendant pled to one (1) count (Count I) of Driving Under the Influence of Alcohol or Controlled Substance (General Impairment), 75 Pa. C.S.A. § 3802(a)(1), as a third offense (fourth lifetime), first tier, graded as a Misdemeanor of the Second Degree (M-2), with a refusal noted. Also at docket number 15-CR-0002383-2015, Defendant pled to

~ 4 ~

one (1) count (Count II) of Driving Under Suspension—DUI-Related, 75 Pa. C.S.A. § 1543(b)(1), graded as a Summary offense. The factual basis for this plea was recited by the prosecutor as follows.

> MS. MORGAN: . . . [O]n May 2nd of 2015 at approximately 12:57 hours at Route 10 and Commons Drive in Sadsbury Township—
>
> THE COURT: Is that a.m. or p.m.?
>
> ?[sic] MS. KOOPMAN: I believe it's a.m.
>
> MS. MORGAN: A.m., your Honor.
>
> THE COURT: All right.
>
> MS. MORGAN: The defendant as operating a vehicle and driving erratically while traveling east on Lincoln Highway. Ms. Elinsky crossed the center line several times, nearly striking a witness' vehicle. She drifted backwards while at an intersection and struck a witness' vehicle. And, your Honor, that did not cause property damage so we're not seeking an accident enhancement here.
>
> Your Honor, when the witness approached the driver, she smelled a strong odor of alcohol and later saw the defendant and her passenger switch driver's seats in a nearby parking lot. The defendant told the responding police officer that she had in fact been driving the vehicle. She exhibited several signs of intoxication, including bloodshot and glassy eyes, as well as failing to maintain her balance at times. The defendant registered positive for alcohol consumption on the PBT, but field sobriety tests could not be administered due to heavy traffic and the incline of the roadway. The defendant did refuse chemical testing. There is no refusal enhancement because of Birchfield, your Honor.
>
> THE COURT: So who would testify in their respective opinions, due to her imbibing alcohol, that she was under the influence of it to a degree that rendered her unfit or unsafe to drive?

MS. MORGAN: Corporal Steven Leifholt of the East Brandywine Township Police Department. Your Honor, at the time she was driving on a license which was suspended DUI-related.

THE COURT: All right. Do you admit to that, young lady?

[DEFENDANT]: Yes, I do.

(Second Verbal Guilty Plea Colloquy, 8/5/16, N.T. 6-7). The written Guilty Plea Colloquy

reflects the following factual predicate for this docket.

In Chester County, on or about May 2, 2015, the defendant drove a vehicle after imbibing alcohol such that the intake of alcohol rendered her incapable of safely driving the vehicle. At that same time, the Defendant's driving privileges were suspended or revoked related to a prior DUI.

(Written Guilty Plea Colloquy, 8/5/16, at 3).

At docket number 15-CR-0002853-2015, the May 10, 2015 offense, Defendant pled to one (1) count (Count I) of Driving Under the Influence of Alcohol or Controlled Substance (General Impairment), 75 Pa. C.S.A. § 3802(a)(1), as a fourth look-back offense (fifth lifetime), first tier, graded as a Misdemeanor of the Second Degree (M-2). Also at docket number 15-CR-0002853-2015, the Defendant pled to one (1) count (Count II) of Careless Driving, 75 Pa. C.S.A. § 3714(a), graded as a Summary offense. The factual predicate for this plea was recited by the prosecutor as follows.

MS. MORGAN: . . . Your Honor, this is another one where there was a minor accident, but you'll hear that there was no damage caused in the accident. So there is no accident enhancement applicable to this case either.

THE COURT: It's a first tier?

MS. MORGAN: First tier.

~ 6 ~

THE COURT: Fourth offense, first tier.

MS. MORGAN: Your Honor, the facts in support of that guilty plea are as follows: On May 10th of 2015, 14:43 hours at the intersection of 322 and Bondsville Road in East Brandywine Township, the defendant struck a vehicle operated by Mr. Mark Santore that was stopped at a traffic light eastbound on 322 at Bondsville Road. After the victim pulled off to the side of the road, the defendant drove past him without stopping and eventually crossed over into the westbound lane of 322 into opposing traffic.

Mr. Santore pursued Ms. Elinsky's vehicle and eventually parked his vehicle in front of hers to prevent her from leaving the scene. She ultimately did stop her vehicle. The defendant smelled strongly of alcohol and was unsteady on her feet, losing her balance while she spoke to the police officers. Her speech was slurred and she was difficult to understand at times. Her eyes were red and bloodshot and glassy. The defendant exhibited alcohol impairment while performing standard field sobriety tests, including inability to recite the alphabet. The responding officers would testify, your Honor, that in their training and experience, the defendant was under the influence of alcohol. This was a blood draw case, your Honor, but that blood draw would not be admissible at trial.

THE COURT: And they would render that opinion that she was under the influence of alcohol to a degree which rendered her incapable of safely driving.

MS. MORGAN: Yes, your Honor, they would. Your Honor—

THE COURT: Hold on. Do you admit—and the careless driving is for her going in the other lane.

MS. MORGAN: Yes, your Honor.

THE COURT: Do you admit to doing that, Ms. Elinsky?

NICOLE ELINSKY: Yes, I do.

(Verbal Guilty Plea Colloquy, 8/5/16, N.T. 7-9). The written Guilty Plea Colloquy sets

forth the factual predicate as follows.

~ 7 ~

In Chester County, on or about May 10, 2015, the defendant drove a vehicle after imbibing alcohol such that the intake of alcohol rendered her incapable of safely driving the vehicle. At that same time, the Defendant drove in careless disregard for the safety of persons or property.

(Written Guilty Plea Colloquy, 8/5/16, at 3).

With respect to docket number 15-CR-0001143-2016 (the March 14, 2016 DUI), Defendant pled to one (1) count (Count I) of Driving Under the Influence of Alcohol or Controlled Substance (General Impairment)(Accident), 75 Pa. C.S.A. § 3802(a)(1), as a fourth or subsequent offense (fifth for look-back purposes, sixth lifetime), middle tier (due to the accident), graded as a Misdemeanor of the First Degree (M-1). Defendant also pled open to one (1) count of Driving Under Suspension—DUI-related (Count II), 75 Pa. C.S.A. § 1543(b)(1), graded as a Summary offense. The verbal Guilty Plea Colloquy reflects the following facts in support of Defendant's plea.

> MS. MORGAN: Your Honor, on 1143 of '16, this is an open guilty plea to driving under the influence, fourth or subsequent offense. This will either be the fifth or sixth offense, depending on the last case that is still on the list,[2] sixth or seventh lifetime. This is a general impairment, your Honor, but this was an accident. So this does have the accident enhancement. And this is a one-year mandatory minimum on this case.
>
> THE COURT: So it makes it a fourth offense, highest tier.
>
> MS. KOOPMAN: Fourth or subsequent, yes.
>
> . . .
>
> MS. MORGAN: . . . The facts in support of that open guilty plea are as follows: Your Honor, on March 14th of 2016 at

---

[2] Referencing docket no. 15-CR-0001053-2016, to which Defendant did not tender a plea but stood at a later date for a stipulated-fact non-jury trial.

approximately 10:29 p.m. at the intersection of Woodward Road just north of Goosetown Road in Embreeville Township, Chester County, the defendant was involved in a one-vehicle accident. An investigation revealed the defendant was driving a motor vehicle that had left the roadway and had struck a guardrail that caused property damage both to her vehicle and the roadway.

When officers arrived on the scene, the defendant had the odor of alcohol. She had slow and slurred speech. She admitted to consuming alcoholic beverages prior to driving. and she did admit to driving. The defendant was asked to perform standard field sobriety tests. And during that time she again showed several signs of impairment. The responding officer, who was Trooper Cody Wile from Embreeville PSP, would testify that in his training and experience, the defendant was under the influence of alcohol to an extent which rendered her unfit to safely operate a motor vehicle.

This, your Honor, is a blood draw case, but that blood draw would be inadmissible. Your Honor, at the time the defendant was driving this motor vehicle, her license was suspended DUI-related.

. . .

THE COURT: Do you admit to that, young lady?

NICOLE ELINSKY: Yes, your Honor.

(Second Verbal Guilty Plea Colloquy, 8/5/16, N.T. 11-13). The written Guilty Plea

Colloquy reflects the following as the factual predicate for these offenses.

In Chester County, on or about March 14, 2016, the defendant drove a vehicle after imbibing alcohol such that the intake of alcohol rendered her incapable of safely driving the vehicle and was involved in an accident that caused damage to her vehicle and the guard rail she struck. At that same time, the Defendant's driving privileges were suspended or revoked related to a prior DUI.

(Written Guilty Plea Colloquy, 8/5/16, at 3).

Sentencing on these three (3) pleas was deferred pending an update of Defendant's PSI, pursuant to a defense request.

On December 7, 2017, Defendant filed a counseled Motion to Suppress Evidence at docket number 15-CR-0001053-2016 (the December 26, 2015 offense). Therein, Defendant claimed that although police did not read to her the PennDOT Form DL-26 or otherwise advise her of the then-standard Implied Consent warnings prior to obtaining her consent to have her blood drawn for BAC purposes, her consent to the BAC blood draw was not voluntary because, she argued in reliance upon *Birchfield v. North Dakota*, 136 S.Ct. 2160 (U.S. N.D. June 23, 2016), it was tainted by her previous knowledge of the content of these warnings which were read to her during her May 2, 2015 and May 10, 2015 DUI arrests seven (7) months earlier. On December 20, 2016 we held an evidentiary hearing on Defendant's Motion. On the record at the close of this hearing, after a brief recess for deliberation, as memorialized in a written Order dated December 20, 2016, we denied Defendant's Motion to Suppress Evidence. (Suppression Hearing Transcript, 12/20/16, N.T. 54-58).

On January 12, 2017, we conducted a stipulated fact non-jury trial at docket number 15-CR-0001053-2016, the December 26, 2015 offense. Defendant renewed her objection to the admission of her BAC test results. (Trial Transcript, 1/12/17, N.T. 13). We overruled counsel's objection on the basis of our ruling on Defendant's suppression motion. (Trial Transcript, 1/12/17, N.T. 13). Subsequently, the stipulated factual predicate was recited at trial as follows.

~ 10 ~

MS. MORGAN: Your Honor, now, this 12th day of January of 2017 the Commonwealth, by and through its attorney, myself, Cindy Morgan and defendant Nicole Elinsky and by and through her attorney, stipulate to the following: On Saturday, December 26th, 2015 at approximately 3:00 p.m. the West Goshen police were dispatched to a two-vehicle accident which had occurred in the parking lot of the Wawa located at 1050 West Chester Pike in West Goshen Township, Chester County, Pennsylvania.

Officers Grandizio and Edwards from the West Goshen Police Department responded to the scene. Upon arrival, the officers spoke with the defendant, Nicole Elinsky. Ms. Elinsky related that she had been the driver of the striking vehicle and that the accident occurred when she backed out form her parking stall and into the second vehicle. She related that she did not see the other vehicle prior to the collision.

Officer Grandizio would testify that he observed several signs of intoxication during his interaction with Ms. Elinsky, including the odor of alcohol on her breath, slurred speech, constricted pupils and nervous behavior. Ms. Elinsky stated that she drank a glass of wine this morning, as well as consuming four tablespoons of Nyquil this morning around 9:00 o'clock.

Ms. Elinsky was asked to perform a series of field sobriety tests and she agreed to do so. Ms. Elinsky performed the field sobriety tests in a manner which indicated to the officers that she was impaired either from the result of alcohol or the combination of drug and alcohol consumption. At that point Ms. Elinsky was arrested for driving under the influence, as it was Officer Grandizio's opinion that in his training and experience the defendant was incapable of operating a motor vehicle due to the ingestion of alcohol and/or a combination of drugs and alcohol.

The defendant was transported to Chester County Hospital, where at 3:58 p.m. ER tech Angel Sullivan drew two vials of the defendant's blood out of her right arm. The vials were secured in an NMS blood kit and transported back to the station where they were held in an evidence refrigerator prior to being taken to the lab. Proper chain of custody was maintained throughout.

~ 11 ~

Commonwealth Exhibit Two is a report generated on January 7th of 2016 by forensic toxicologist Ayako, A-Y-A-K-O Chan, C-H-A-N Hosokawa, H-O-S-O-K-A-W-A of NMS Labs. Commonwealth Exhibit Two documents the toxicologist's analysis of two vacu-sealed gray top tubes containing the whole blood specimen collected from the defendant. Commonwealth Exhibit Two is a fair and accurate copy of Scientist Chen-Hosokawa's report and accurately reflects his analysis and findings with respect to the whole blood specimen of the defendant.

Forensic Toxicologist Chen-Hosokawa used standard, reliable, accurate and properly maintained and calibrated equipment at NMS Labs. The defendant's blood specimen showed a blood alcohol concentration or BAC of .194 percent.

THE COURT: So agreed, counsel for the defense—

MS. KOOPMAN: Yes, your Honor.

THE COURT: -- as far as the stipulation.

MS. KOOPMAN: Yes.

THE COURT: I just point out, are we missing a word in paragraph nine? It says the defendant was incapable of operating motor vehicle. Should there be safely in there anywhere?

MS. MORGAN: Safely operating a motor vehicle, there should, your Honor.

THE COURT: I remember there is an old Superior Court case, I believe, that it seems like this is a stipulated non-fact jury to preserve the appeal and to cover PCRA issues.

Young lady, do you understand that this stipulation, it sounds like from what I've just heard, I have to go on what the facts are, in other words, your lawyer is simply trying to preserve the issue for appeal as to whether or not the blood results were admissible, and that the stipulation is almost like, some lawyers refer to is it as a slow guilty plea.

NICOLE ELINSKY: I understand.

~ 12 ~

THE COURT: Do you understand? In other words, I just want to point that out because there was an appellate court case, I forget when, about non-jury waivers. And someone, one of the PCRA counsel brought an ineffective claim that really the non-jury stipulated fact was simply a guilty plea. But the intent of this is to preserve the issue.

MS. KOOPMAN: Yes. The intent of this is to preserve for appeal the challenge to the consensual nature of the blood draw.

THE COURT: Right. Okay. Do you have any objection to paragraph nine of C-1, the stipulation, where the defendant was incapable of – do you want to add the word safely?

MS. KOOPMAN: I have no objection, your Honor.

THE COURT: And that's what you're asking for.

MS. MORGAN: Yes, your Honor.

(Trial Transcript, 1/12/17, N.T. 14-19; 1/12/17, Exs. C-1, C-2).

On January 18, 2017, we issued a non-jury Verdict finding Defendant guilty at docket number 15-CR-0001053-2016 of committing the crimes of Driving Under the Influence of Alcohol or Controlled Substance (Count I), 75 Pa. C.S.A. § 3802(a)(1) (General Impairment) and Driving Under the Influence of Alcohol or Controlled Substance (Count I), 75 Pa. C.S.A. § 3802(c) (Highest Tier) on or about December 26, 2015. We specifically found that her BAC on this date was .194% within two (2) hours after Defendant had driven, operated or been in actual physical control of the movement of the vehicle.

We sentenced Defendant, with the benefit of a Pre-Sentence Report, at all four (4) dockets on February 15, 2017. At docket number 15-CR-0002383-2015 (the May 2, 2015 DUI)(open plea; 3rd look-back offense; 4th lifetime offense; 1st tier), we sentenced

~ 13 ~

Defendant on Count I, Driving Under the Influence of Alcohol or Controlled Substance (General Impairment) (Prior Record Score of 2: Offense Gravity Score of 3), 75 Pa. C.S.A. § 3802(a)(1), to a term of six (6) months to twelve (12) months, which includes a ten (10) day mandatory minimum, both of which fall within the standard range of the Statewide Sentencing Guidelines, with a R.R.R.I. Minimum of four and a half (4.5) months, and to pay a $500.00 fine as well as the costs of prosecution. On Count II, Driving Under Suspension—DUI-related, 75 Pa. C.S.A. § 1543(b)(1), we sentenced Defendant to a flat sentence of sixty (60) days, with a R.R.R.I. Minimum of one (1) month and fifteen (15) days, and ordered Defendant to pay a fine of $500.00 as well as the costs of prosecution. We ran Defendant's sentence on Count II at this docket concurrent with the sentence we imposed on her at Count I of this docket. We gave Defendant credit for time served from August 12, 2015 through August 24, 2015 and from March 15, 2016 through February 15, 2017 and ordered Defendant to complete a CRN Evaluation/Alcohol Highway Safety School and to undergo a Drug and Alcohol Evaluation and to follow any and all recommended treatment. Defendant's aggregate sentence at docket number 15-CR-0002383-2015 is thus six (6) months to twelve (12) months.

At docket number 15-CR-0002853-2015 (the May 10, 2015 DUI)(open plea; 4th look-back offense; 5th lifetime offense; 1st tier), we sentenced Defendant on Count I, Driving Under the Influence of Alcohol or Controlled Substance (General Impairment) (Prior Record Score of 2; Offense Gravity Score of 3), 75 Pa. C.S.A. § 3802(a)(1), to a term of six (6) months to twelve (12) months, which includes a ten (10) day mandatory minimum, both of which fall within the standard range of the Statewide Sentencing

~ 14 ~

Guidelines, with a R.R.R.I. Minimum of four and a half (4.5) months, to run consecutively to the sentence imposed at Count I of docket number 15-CR-0002383-2015 (the May 2, 2015 DUI). We also fined Defendant $500.00 and ordered her to pay the costs of prosecution. On Count II of docket number 15-CR-0002853-2015 (the May 10, 2015 DUI), her conviction for Careless Driving, 75 Pa. C.S.A. § 3714(a), we sentenced Defendant to pay a fine of $25.00 and the costs of prosecution. We gave Defendant credit for time served from August 12, 2015 through August 24, 2015 and from March 15, 2016 through February 15, 2017. We ordered Defendant to complete a CRN Evaluation/Alcohol High Safety School and to undergo a Drug and Alcohol Evaluation and to follow any and all recommended treatment. We also ordered Defendant to pay a FLAF lab fee of $134.00 to the Brandywine Police Department. Defendant's aggregate prison sentence at docket number 15-CR-0002853 is thus six (6) months to twelve (12) months.

At the third open guilty plea case, docket number 15-CR-0001143-2016 (the March 14, 2016 DUI), we sentenced Defendant for her conviction for Driving Under the Influence of Alcohol or Controlled Substance (General Impairment)(Accident with Property Damage Enhancement)(Count I)(open plea; 5th look-back offense; 6th lifetime offense; 2nd tier)(Prior Record Score of 2; Offense Gravity Score of 5), 75 Pa. C.S.A. § 3802(a)(1) to the mandatory term of one (1) year to two (2) years in prison, which also falls within the standard range of the Statewide Sentencing Guidelines, with a R.R.R.I. Minimum of nine (9) months. We ran this sentence consecutively to the sentence we imposed at docket number 15-CR-0002853-2015 (the May 10th, 2015 DUI) and ordered

~ 15 ~

Defendant to pay a fine of $1,500.00 as well as the costs of prosecution. On Count II, Driving Under Suspension—DUI-Related, 75 Pa. C.S.A. § 1543(b)(1), we sentenced Defendant to a flat term of sixty (60) days' incarceration, to run concurrently with the sentence imposed on Count I of docket number 15-CR-0001143-2016, with a R.R.R.I. Minimum of one (1) month and fifteen (15) days, and to pay a fine of $500.00 as well as the costs of prosecution. We gave Defendant credit for time served from August 12, 2015 through August 24, 2015 and from March 15, 2016 through February 15, 2017. We ordered Defendant to complete a CRN Evaluation/Alcohol Highway Safety School and a Drug and Alcohol Evaluation and to follow any and all recommended treatment. Finally, we ordered Defendant to pay a FLAF laboratory fee of $246.00 to National Medical Services. Defendant's aggregate sentence at docket number 15-CR-0001143-2016 is one (1) to two (2) years' incarceration.

At docket number 15-CR-0001053-2016, the stipulated fact non-jury trial case (the December 26, 2015 DUI), we sentenced Defendant on Count I, Driving Under the Influence of Alcohol or Controlled Substance, 75 Pa. C.S.A. § 3802(c) (6th look-back offense, seventh lifetime offense; highest tier) (Prior Record Score of 2; Offense Gravity Score of 5), to the mandatory term of one (1) to two (2) years in prison, which falls within the standard range of the Statewide Sentencing Guidelines, to run consecutively to the sentence we imposed at docket number 15-CR-0001143-2016, with a R.R.R.I. Minimum of nine (9) months. We ordered Defendant to pay a $2,500.00 fine plus the costs of prosecution. We gave Defendant credit for time served from August 12, 2015 through August 24, 2015 and from March 15, 2016 through February 15, 2017. We ordered

~ 16 ~

Defendant to complete a CRN Evaluation/Alcohol Highway Safety School as well as a Drug/Alcohol Evaluation and to follow any and all recommended treatment. Defendant's aggregate sentence at this docket was one (1) to two (2) years' incarceration. Defendant's aggregate prison term at all four dockets is three (3) to six (6) years' incarceration in a state correctional facility.

On February 24, 2017, at all four dockets, Defendant filed a counseled post-sentence Motion to Reconsider/Modify Sentence. Therein, Defendant claimed that her terms of incarceration were individually and as a whole excessive. Defendant claimed that this Court abused its discretion in sentencing the Defendant because the sentences allegedly fail to address the rehabilitative needs of the Defendant or account for mitigating circumstances. Defendant requested that the undersigned either reduce her sentences or run all of the sentences concurrent to one another. On March 20, 2017, we held an evidentiary hearing on Defendant's Motion. By Order dated May 16, 2017 we denied and dismissed Defendant's post-sentence Motion. Defendant's timely Notice of Appeal followed on June 15, 2017.

On June 20, 2017, we directed Defendant to file within twenty-one (21) days a Concise Statement of Errors Complained of on Appeal, pursuant to Pa. R.A.P. 1925(b). Defendant timely complied on July 11, 2017, raising an aggregate of two issues. The first issue is found only on Defendant's Concise Statement at docket number 15-CR-0001053-2016 (the stipulated fact non-jury trial case)(the December 26, 2015 DUI) as it concerns our denial of Defendant's Motion to Suppress Evidence. Defendant's first issue at docket number 15-CR-0001053-2016 is phrased as follows.

The trial court erred in denying Appellant's motion to suppress regarding the results of the blood test performed pursuant to a warrantless search of Appellant's blood. Specifically, the trial court erred in finding that consent was given voluntarily for the warrantless blood draw and the use of the results obtained from the search.

(Deft.'s Concise Statement, No. 15-CR-0001053-2016, 7/11/17, at 1, para. 1). The second issue raised in Defendant's Concise Statement at docket number 15-CR-0001053-2016, and the only issue raised in Defendant's Concise Statement at the remaining three other dockets, is phrased as follows.

The Court abused its discretion when it imposed an aggregate sentence of three (3) to six (6) years on Criminal Docket Numbers CP-15-CR-1053-2016, CP-15-CR-1143-2016, CP-15-CR-2383-2015, and, CP-15-CR-2853-2015. Appellant asserts the aggregate sentence imposed is manifestly unreasonable and excessive. The Court did not give appropriate weight to the following factors:

(a) Appellant's childhood abuse

(b) Appellant's history of domestic abuse

(c) Appellant's health problems

(d) Appellant's serious alcohol addiction

(e) Appellant's underlying mental health concerns

(f) Appellant's rehabilitative needs

(g) Appellant's remorse

(h) Appellant's age

(i) Appellant's accomplishments and dedication to counseling while incarcerated.

(Deft.'s Concise Statement, No. 15-CR-0001053-2016, 7/11/17, at 1, para. 2; Deft.' Concise Statement, Nos. 15-CR-0002383-2015; 15-CR-0002853-2015; 15-CR-0001143

~ 18 ~

2016, 7/11/17, at 1, para. 1). Pursuant to the mandate of Pa. R.A.P. 1925(a), we now write a brief recommendation to this Honorable reviewing Court concerning the merits of the issues Defendant has raised on appeal in the above-captioned matters.

We will address the first argument that the Defendant has raised at docket number 15-CR-0001053-2016, (the stipulated fact non-jury trial stemming from Defendant's December 26, 2015 DUI), which is, namely, that the *O'Connell* warnings she received seven (7) months prior to the DUI arrest she incurred on December 26, 2015 tainted the voluntariness of her consent to the blood draw on December 26, 2015, despite the fact that she was not read PennDOT's Form DL-26 or otherwise given Implied Consent/*O'Connell* warnings on that date, because she subjectively believed due to her prior DUI's seven (7) months earlier that she would face enhanced criminal penalties if she refused to consent to the blood draw on December 26, 2015. Essentially, she argues that her prior receipt of the Implied Consent/*O'Connell* warnings seven (7) months earlier effectively coerced her consent on December 26, 2015 and that as a result her consent to the blood draw on December 26, 2015 was not voluntary.

We note that there is no Pennsylvania case law directly on point supporting or opposing Defendant's theory. However, analogizing Defendant's case to others in which subsequent searches are preceded by unconstitutional law enforcement conduct we note that there is authority for the proposition that taint from the prior unlawful conduct may dissipate and become so attenuated that a subsequent valid search, or, in a different context, a subsequent valid confession after a first un-*Mirandized* interrogation, is not necessarily precluded simply because the Defendant was subjected previously to some

~ 19 ~

improper government conduct. *See Commonwealth v. Santiago*, 160 A.3d 814 (Pa. Super. 2017), *reargument denied* (June 16, 2017)("[a]lthough the suppression remedy extends to both indirect and direct products of unconstitutional invasions, suppression is not appropriate when the chain of causation proceeding from the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstance so as to remove the taint imposed upon that evidence by the original illegality."); *Commonwealth v. Rood*, 686 A.2d 442 (Pa. Cmwlth. 1996), *appeal denied*, 699 A.2d 736 (Pa. 1997)(to determine if a particular admission is tainted by unlawful police conduct, the court must examine the totality of the circumstances, including the following factors: (1) the voluntariness of the confession, i.e., whether the defendant's statement was an act of free will sufficient to purge the primary taint; (2) the intervention of other circumstances subsequent to an illegal arrest which provide a cause so unrelated to that initial illegality that the acquired evidence may not reasonably be said to have been directly derived from, and thereby tainted, by that illegal arrest; (3) the temporal proximity of the arrest and the confession; and (4) the purpose and flagrancy of the official misconduct). *See also Commonwealth v. Henderson*, 47 A.3d 797 (Pa. 2012), *cert. denied, Henderson v. Pennsylvania*, 133 S.Ct. 435 (U.S. Pa. 2012), *denial of post-conviction relief aff'd*, *Commonwealth v. Henderson*, 145 A.3d 786 (Pa. Super. 2016)(for text, *see* 2016 WL 1573615 (Pa. Super. 2016)), *appeal denied*, 158 A.3d 74 (Pa. 2016), *cert. denied*, *Henderson v. Pennsylvania*, 137 S.Ct. 1826 (U.S. Pa. 2017), *dismissal of post-conviction relief aff'd*, *Commonwealth v. Henderson*, 145 A.3d 788 (Pa. Super. 2016)(for text, *see* 2016 WL 1587094 (Pa. Super. 2016))(independent source doctrine validated a serial search warrant obtained from a second investigation conducted by detective from the

same department as officer whose affidavit was insufficient to establish probable cause for issuance of first warrant); *Commonwealth v. Chacko*, 459 A.2d 311 (Pa. 1983)(confession obtained after suspect has been adequately advised of his constitutional rights is not *ipso facto* inadmissible because earlier confession or inculpatory statement was made in absence of warnings as to those rights).

We find that the passage of seven (7) months' time, the fact of a different jurisdiction, a different officer, the absence of the offensive Implied Consent/*O'Connell* warnings, the fact that the "misconduct" at issue, the former provision of the Implied Consent/*O'Connell* warnings, was at the time a requirement of Pennsylvania law and not an error that arose by virtue of imprudent or improper actions of the police and that the police officer who initiated the blood draw request on December 26, 2015 did not exploit the prior illegality in order to obtain Defendant's consent, and that the Defendant, as we will discuss below, gave her unqualified and volitional consent to the search are sufficient to demonstrate that the connection between the prior illegality (the provision of Implied Consent/*O'Connell* warnings seven (7) months earlier) and the challenged evidence has become so attenuated as to dissipate any taint that might, arguably, have otherwise existed and that, as we will discuss below, the BAC evidence at issue *sub judice* resulted from an intervening independent act of free will. *See In re Betrand*, 303 A.2d 486 (Pa. 1973)(challenged evidence may be purged of the primary taint only if it results from an intervening independent act of free will or if the connection between the illegality and the evidence at issue has become so attenuated as to dissipate the taint).

Prior law enforcement misconduct does not forever bar a suspect from subsequently giving a voluntary consent to a search or from voluntarily unburdening him or herself by confessing. Further, there is no bright-line rule as to when taint is dissipated or so attenuated as to not work a prejudice to the subsequent search. Indeed, there can be no bright-line rule. Defendant suggests that seven (7) months is not long enough. Another defendant may posit that a year or two (2) years or seven (7) years, or even a lifetime, is not long enough. The fact that a defendant was once subjected to an unlawful search does not, indeed cannot, forever bar law enforcement's ability to investigate subsequent criminal conduct involving that defendant. Accepting Defendant's theory in the matter *sub judice* would have precisely this effect.

Thirdly, the Defendant cannot have it both ways. Had law enforcement given Defendant the then-standard Implied Consent/*O'Connell* warnings, either by reading to her PennDOT's Form DL-26 or otherwise, which the affiant, Officer Grandizio of the West Goshen Township Police Department testified was not his Department's policy at the time of Defendant's stop unless presented with a suspect who refused to consent to a blood draw, she would likely have argued, and successfully so, that the warnings were coercive and unconstitutional under *Birchfield, supra* and that her blood draw was unconstitutional. As a matter of policy she should not now be countenanced to complain that the absence of those unconstitutional warnings vitiated the voluntariness of her consent.

Fourthly, Implied Consent warnings have never been required in the

~ 22 ~

absence of a refusal. *See Commonwealth v. Gorbea-Lespier*, 66 A.3d 382, 289 (Pa. Super. 2013), *appeal denied*, 77 A.3d 1259 (Pa. 2013)(only refusals must be informed). Defendant did not refuse her consent.

Finally, even in cases where Implied Consent warnings immediately preceded a consent to a blood draw, the appellate courts do not automatically throw out the conviction, but rather remand the case to the trial court for an evaluation of the validity of the person's consent, given the "partial inaccuracy" of the warnings,[3] in light of the totality of the circumstances. *See Commonwealth v. Evans*, 153 A.3d 323 (Pa. Super. 2016)(remand for totality of the circumstances evaluation of the validity of consent). *See also Commonwealth v. Gaetano*, 2017 WL 1246683 (Pa. Super. 2017)(remanded for determination of validity of consent to warrantless blood draw in light of partial inaccuracy of Implied Consent warnings administered). Thus, as we determined at Defendant's Suppression Hearing, the voluntariness of Defendant's consent is the polestar consideration in determining the propriety of the blood draw at issue.

The Fourth Amendment to the United States Constitution provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or thing to be seized.

---

[3] The *O'Connell*/Implied Consent/Form DL-26 warnings are only partially inaccurate because *Birchfield, supra* did not disturb the Commonwealth's ability to attach civil evidentiary penalties or to suspend licenses on the basis of one's refusal to consent to a warrantless blood draw at law enforcement's request. *Evans, supra.*

U.S. Const., Amend. IV. Article I, Section 8 of the Pennsylvania Constitution provides,

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant. .

Pa. Const., Art. I, § 8. Both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect the people from unreasonable searches and seizures. *Commonwealth v. McCree*, 924 A.2d 621 (Pa. 2007).

The administration of a blood test performed by an agent of, or at the direction of the government, constitutes a search under both the United States and Pennsylvania Constitutions. *Commonwealth v. Evans*, 153 A.3d 323 (Pa. Super. 2016). Generally, a search or seizure is not reasonable unless conducted pursuant to a valid search warrant upon a showing of probable cause. *Commonwealth v. Riedel*, 651 A.2d 135 (Pa. 1994). A warrantless search or seizure is presumptively unreasonable under the Fourth Amendment and the Pennsylvania Constitution, subject to a few specifically established, well-delineated exceptions. *Commonwealth v. McCree*, 924 A.2d 621 (Pa. 2007). Consent, voluntarily given, is one exception to the requirement of the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution that a warrant be obtained in order for a search to be constitutionally permissible. *Schneckloth v Bustamonte*, 93 S.Ct. 2041 (U.S. Cal. 1973); *Commonwealth v. Strickler*, 757 A.2d 884 (Pa. 2000); *Commonwealth v. Cleckley*, 738 A.2d 427 (Pa. 1999); *Commonwealth v. Kemp*, 961 A.2d 1247 (Pa. Super. 2008).

When discussing the voluntariness of a consent to search, the central Fourth Amendment inquiries entail an assessment of the constitutional validity of the citizen/police encounter giving rise to the consent and, ultimately, the voluntariness of the consent; where the underlying interaction is found to be lawful, voluntariness becomes the exclusive factor. *Commonwealth v. Strickler*, 757 A.2d 884 (Pa. 2000); *Commonwealth v. Kemp*, 961 A.2d 1247 (Pa. Super. 2008). Here, the facts to which the parties stipulated indicate that Defendant was involved in a two-car accident in the parking lot of a convenience store. When police arrived, Defendant exhibited several signs of intoxication, including the odor of alcohol on her breath, slurred speech, constricted pupils, and nervous behavior. She admitted to having drunk a glass of wine in the morning as well as to having consumed four (4) tablespoons of Nyquil at 9:00 a.m. She performed the requested field sobriety tests in a manner which indicated to the responding officers that she was impaired. Unquestionably, the officers had probable cause to believe that Defendant was unable to safely operate a motor vehicle due to the consumption of alcohol, and thus they had probable cause to arrest her for Driving Under the Influence of Alcohol or Controlled Substance, 75 Pa. C.S.A. § 3802(a)(1), -(c). Indeed Defendant does not contest the validity of the underlying interaction that preceded the officers' request for her to submit to a blood alcohol test.

Because the responding officers had probable cause to arrest the Defendant for suspected DUI, they had probable cause to request the Defendant to submit to a chemical test. *See Commonwealth v. Urbanski*, 627 A.2d 789 (Pa. Super. 1993), *appeal denied*, 634 A.2d 221 (Pa. 1993)("reasonable grounds" for requiring

~ 25 ~

chemical test under 75 Pa. C.S.A. § 1547(a)(1) means probable cause). Given the validity of the underlying interaction leading to the officers' request for Defendant to submit to chemical testing, the voluntariness of Defendant's consent to that test is all that is left to determine.

In determining the voluntariness of a consent to search it is Fourth Amendment standards of voluntariness that apply, not Fifth and/or Sixth Amendment standards. *Commonwealth v. Smith*, 77 A.3d 562 (Pa. 2013). Blood test results are not testimonial; accordingly, they are analyzed under the Fourth Amendment, not the Fifth or Sixth Amendment. *Commonwealth v. Smith*, 77 A.3d 562 (Pa. 2013). The Pennsylvania Supreme Court has held that the Federal voluntariness standards for consensual searches adequately protects the privacy rights of Pennsylvania citizens under the search and seizure provisions of the State Constitution. *Commonwealth v. Cleckley*, 738 A.2d 427 (Pa. 1999). Accordingly, the test for the validity of a consent to search is the same for both the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution, i.e., that the consent is given voluntarily. *Commonwealth v. Mack*, 796 A.2d 967 (Pa. 2002).

In a voluntariness inquiry, the Commonwealth bears the burden of proving that a consent to search, as an exception to the Fourth Amendment's warrant requirement, under the totality of the circumstances is the product of an essentially free and unconstrained choice, not the result of duress or coercion, express or implied, or a will overborne. *Commonwealth v. Smith*, 77 A.3d 562 (Pa. 2013); *Commonwealth v. Strickler*, 757 A.2d 884 (Pa. 2000); *Commonwealth v. Kemp*, 961 A.2d 1247 (Pa. Super.

~ 26 ~

2008). The Commonwealth must meet its burden by clear and convincing evidence. *Commonwealth v. Gorbia-Lespier*, 66 A.3d 382 (Pa. Super. 2013), *appeal denied*, 77 A.3d 1259 (Pa. 2013)(*quoting Commonwealth v. Blasioli*, 685 A.2d 151, 156 (Pa. Super. 1996), *aff'd*, 713 A.2d 1117 (Pa. 1998)(citations omitted))("'The burden is upon the Commonwealth to prove by clear and convincing evidence that valid consent was given by [defendant].'").

The standard for measuring the scope of a person's consent to a warrantless search is based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. *Commonwealth v. Smith*, 77 A.3d 562 (Pa. 2013). *See also Commonwealth v. Kemp*, 961 A.2d 1247 (Pa. Super. 2008)(the test for voluntariness of consent to a warrantless search entails an examination of the objective circumstances surrounding the police/citizen encounter to determine whether there was a show of authority that would impact upon a reasonable citizen-suspect's behavior).

Some of the factors that can be considered when evaluating the voluntariness of a defendant's consent to a warrantless search include: (1) the defendant's custodial status; (2) the use of duress or coercive tactics by law enforcement personnel; (3) the defendant's knowledge of his right to refuse consent; (4) the defendant's education and intelligence; (5) the defendant's belief that no incriminating evidence will be found; and (6) the extent and level of the defendant's cooperation with law enforcement personnel. *Commonwealth v. Cleckley*, 738 A.2d 427 (Pa. 1999). *See also Schneckloth v. Bustamonte*, 93 S.Ct. 2041 (U.S. Cal. 1973)(in determining whether

~ 27 ~

a defendant's will was overborne in a particular case, some of the factors taken into account have included the youth of the accused, his or her lack of education, his or her low intelligence, the lack of any advice to the accused of his or her constitutional rights, the length of the detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep); *Commonwealth v. Kemp*, 961 A.2d 1247 (Pa. Super. 2008)(factors to be employed in determining whether consent to a warrantless search is voluntarily given are: (1) the presence or absence of police excesses; (2) whether there was physical contact; (3) whether the police directed the citizen's movements; (4) police demeanor and manner of expression; (5) the location of the interdiction; (6) the content of the questions and statements; (7) the existence and character of the initial investigative detention, including its degree of coerciveness; (8) whether the person has been told that he is free to leave; and (9) whether the citizen has been informed that he is not required to consent to the search).

As we stated earlier, Pennsylvania law does not require that a motorist's consent to a chemical test be informed; it only requires that a motorist's refusal to consent be informed. *Commonwealth v. McCoy*, 895 A.2d 18 (Pa. Super. 2006), *aff'd*, 975 A.2d 586 (Pa. 2009). Defendant did not refuse to consent to the blood test.

Similarly, there is no *per se* rule that police officers must explicitly inform drivers consenting to blood testing that the results of the test may be used against them in criminal prosecutions in order for the consent to be valid. *Commonwealth v. Smith*, 77 A.3d 562 (Pa. 2013); *Commonwealth v. Cleckley*, 738 A.2d 427 (Pa. 1999).

~ 28 ~

Further, while knowledge of the right to refuse consent to the search is a factor to be taken into account, under the totality of the circumstances test, the Commonwealth is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent, as an exception to the Fourth Amendment's warrant requirement. *Schneckloth v. Bustamonte*, 93 S.Ct. 2041 (U.S. Cal. 1973); *Commonwealth v. Strickler*, 757 A.2d 884 (Pa. 2000). *See Commonwealth v. Cleckley*, 738 A.2d 427 (Pa. 1999)(defendant voluntarily consented to warrantless search of his person, even though he was not informed of his right to refuse consent, where the police officer informed the defendant that the defendant was accused of selling drugs, the officer asked the defendant if he could "pat him down", the defendant immediately responded in the affirmative, expressly disclaiming that he possessed any drugs, and there was no evidence that the officer exerted any pressure on the defendant to submit to the search or exerted any force); *Commonwealth v. Kemp*, 961 A.2d 1247 (Pa. Super. 2008)(defendant voluntarily consented to search of vehicle during investigatory detention following valid traffic stop, even though investigating officer did not inform defendant that he could refuse to consent to the search; there was no excessive police conduct, no physical contact occurred between police and the defendant, the officer did not display his weapon, officer's order to defendant's companion to exit the car was necessitated by the fact that the companion was not a licensed driver and had to move out of the driver's seat, defendant did not lack maturity or sophistication nor was he intellectually incapable of exercising free will, and the character of the initial investigatory detention, the traffic stop, was routine and the ensuing investigatory detention was supported by reasonable suspicion.

~ 29 ~

While the inquiry into the voluntariness of a consent to search is an objective one under the totality of the circumstances test, the maturity, sophistication and mental or emotional state of the defendant are also factors to be taken into account. *Commonwealth v. Smith*, 77 A.3d 562 (Pa. 2013); *Commonwealth v. Strickler*, 757 A.2d 884 (Pa. 2000); *Commonwealth v. Kemp*, 961 A.2d 1247 (Pa. Super. 2008).

In the matter *sub judice*, the record reflects that Defendant, at the time of the December 26, 2015 DUI, was a repeat offender in her mid-thirties with some college education. (Second Verbal Guilty Plea Colloquy, 8/5/16, N.T. 3-4). Officer Grandizio described her as very cooperative and pleasant with the officers during the accident/DUI investigation. (Suppression Hearing Transcript, 12/20/16, N.T. 10, 15, 17, 20, 23). She had been taken to the hospital incident to her arrest on suspicion of DUI, so she was in custody at the time she was requested to submit to the blood test, although she was not handcuffed during the test and was permitted to sit down almost immediately at the hospital. (Suppression Hearing Transcript, 12/20/16, N.T. 16-20, 25-28). The record is devoid of evidence of police excesses or any use of duress or coercive tactics by law enforcement personnel beyond the fact of her custodial status, which itself was amply supported by probable cause and a factor of Defendant's own behavior. Having accumulated five (5) DUI arrests prior to December 26, 2015, Defendant can be deemed to have been well aware of her right to refuse to consent to the blood test, which right existed even before the United States Supreme Court issued *Birchfield v. North Dakota*, 136 S.Ct. 2160 (U.S. N.D. 2016). However, Officer Grandizio admitted that he did not advise Defendant that she had a right to refuse on December 26, 2015 (Suppression Hearing Transcript, 12/20/16, N.T. 29) and Defendant certainly would argue that from her

~ 30 ~

past experience she had a subjective belief that a refusal would result in enhanced criminal penalties for her at a later date. Yet this knowledge did not stop her on previous occasions from refusing to cooperate with law enforcement's requests for chemical testing. (See Affidavits of Probable Cause, Nos. 15-CR-0002383-2015; 15-CR-0002853-2015). Officer Grandizio at all times advised Defendant of the purpose for which he was asking her to submit to a chemical test of her blood. (Suppression Hearing Transcript, 12/20/16, N.T. 14 17-18, 22). Officer Grandizio did not read to Defendant PennDOT's Form DL-26 or otherwise advise her of the Implied Consent/O'Connell warnings, including the enhanced penalties which were at the time under Pennsylvania law applicable to a motorist's refusal of chemical testing. (Suppression Hearing Transcript, 12/20/16, N.T. 20, 29, 31). Despite her previous DUI experiences, Defendant did not communicate to Officer Grandizio any hesitancy or reluctance to consent to chemical testing nor did she ask any question or express any concerns about any potential ramifications of a refusal. (Suppression Hearing Transcript, 12/20/16, N.T. 18, 20, 22-23). As far as the factor regarding her belief that no incriminating evidence would likely be found, Defendant had admitted to Officer Grandizio at the scene of the accident she caused that she had drunk a glass of wine and consumed four (4) tablespoons of Nyquil that morning. (Stipulation, 1/12/17, Cmwlh.'s Exhibit 1, at 2, para. 6; Suppression Hearing Transcript, 12/20/16, N.T. 11). It is unlikely that she believed no incriminating evidence would be found as a result of the blood draw. The length of the detention appears to have been approximately three (3) to four (4)[4] hours and did not exceed that

---

[4] Police were dispatched to the scene of the accident at approximately 3:00 p.m., the blood draw occurred at 3:58 p.m., Defendant was then transported back to the police station, processed, and placed in a holding cell until a

necessary to address the circumstances of the accident, to investigate Officer Grandizio's suspicion that Defendant was intoxicated, and then, after Defendant was processed at the police station, to wait for Defendant's friend to arrive to transport her home. (Suppression Hearing Transcript, 12/20/16, N.T. 8-28). The time spent at the hospital undergoing the blood test was approximately five (5) minutes. (Suppression Hearing Transcript, 12/20/16, N.T. 28). There was no repeated and prolonged questioning, nor were there any physical punishments, such as withholding food or sleep, administered to the Defendant. (Suppression Hearing Transcript, 12/20/16, N.T. 8-28). There was no physical contact between Defendant and the officers beyond that necessary to effectuate the arrest, i.e., place handcuffs on the Defendant and put her in the back of the police cruiser, and remove the handcuffs upon arrival at the hospital. (Suppression Hearing Transcript, 12/20/16, N.T. 8-28). Her movements were directed, but only by virtue of the fact of her arrest on suspicion of DUI, again, as we stated above, a suspicion which was amply supported by probable cause. The interdiction occurred in mid-afternoon at the scene of an accident caused by the Defendant in the parking lot of a convenience store, a very public place, and then the blood draw occurred at the hospital. (Suppression Hearing Transcript, 12/20/16, N.T. 8, 16, 18-20, 24-29; 1/12/17, Ex. C-1). The content of the officers' questions and the statements made were within the scope of those necessary and appropriate to effectuate the investigation of the accident and the officers' suspicions that Defendant had been driving under the influence. (Suppression Hearing Transcript, 12/20/16, N.T. 9-29, 31; 1/12/17, Ex. C-1). Defendant was very cooperative

---

family friend came to the station to pick her up. (1/12/17, Ex. C-1; Suppression Hearing Transcript, 12/20/16, N.T. 7, 8, 23).

~ 32 ~

and pleasant during her interactions with the officers. (Suppression Hearing Transcript, 12/20/16, N.T. 10, 15, 17, 20, 23). The existence and character of the initial investigative detention were marked by cordiality and politeness, not coercion. Defendant was not advised that she was free to leave, but that is because the officers had developed, as a result of Defendant's own actions, probable cause to believe that Defendant had been driving under the influence of an intoxicating substance or substances at the time she caused the accident. (Suppression Hearing Transcript, 12/20/16, N.T. 8-32).

The factors that weigh in favor of concluding that Defendant's consent was not voluntary include that she was in police custody when she was asked to consent to the blood test, that she was not advised of her right to refuse, and her prior experience with the Informed Consent/*O'Connell*/Form DL-26 warnings. The factors that weigh in favor of concluding that Defendant's consent was voluntary include the fact that seven (7) months had passed since her last DUI experience; she was in a different jurisdiction from her earlier DUI experiences; she was interacting with different officers than she had during her previous DUI experiences; the officers on December 26, 2015 did not read to Defendant the Implied Consent/*O'Connell*/Form DL-26 warnings or connect her refusal to any type of criminal or civil penalty; Defendant did not inquire about possible penalties linked to refusal or express to the officers in any way that she did not wish to consent or was hesitant about the process; the entire interaction between Defendant and the officers was cordial and polite with Defendant described by the officers as very cooperative and pleasant; no police excesses or punishments were administered to the Defendant; the only arguably coercive aspect of the whole interaction was that which is inherently

~ 33 ~

attendant to the circumstance of being arrested for Driving Under the Influence of Alcohol or Controlled Substance, and was entirely due to the actions of the Defendant herself and supported by, at the time of the police interaction, probable cause; and the fact that Defendant has a long history of DUI arrests, the one on December 26, 2015 being her fifth for look-back purposes, but her sixth lifetime offense, and was therefore quite experienced insofar as the factors regarding her knowledge of her right to refuse, of the purpose for which the blood is being drawn (which, as we noted earlier, Officer Grandizio advised her about as well), and of whether she was or was not free to leave are concerned. The factors demonstrating that Defendant's consent to the DUI blood test on December 26, 2015 was voluntary far outweigh the limited factors relied upon by the Defendant to suggest that her consent was involuntary. Consequently, we conclude, as we did at the close of the Suppression Hearing held on December 20, 2016, that the Commonwealth had met its burden to prove by clear and convincing evidence that Defendant's consent to the chemical test of her blood for DUI purposes on December 26, 2015 was voluntarily given under the totality of the circumstances. Accordingly, we denied Defendant's suppression motion. It is our position, after reviewing the record in light of the relevant constitutional, statutory and decisional law, that it was no abuse of discretion to do so.

Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights. *Commonwealth v. Evans*, 153 A.3d 323 (Pa. Super. 2016). Having determined that the

~ 34 ~

Commonwealth met its burden to prove the voluntariness of the Defendant's consent by clear and convincing evidence, and that the Commonwealth also clearly and convincingly established the validity of the underlying interaction between the police and the Defendant leading up to the blood test, we determined that the BAC evidence derived therefrom was admissible at trial and Defendant's suppression motion had no merit. Admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will not be reversed on appeal absent a showing that the trial court committed an abuse of discretion. *Commonwealth v. Johnson*, 42 A.3d 1017 (Pa. 2012), *cert. denied*, *Johnson v. Pennsylvania*, 133 S.Ct. 1795 (U.S. Pa. 2013), *habeas corpus dismissed*, *Johnson v. Wetzel*, 2014 WL 888529 (M.D. Pa. 2014). An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. *Commonwealth v. Johnson*, 42 A.3d 1017 (Pa. 2012), *cert. denied*, *Johnson v. Pennsylvania*, 133 S.Ct. 1795 (U.S. Pa. 2013), *habeas corpus dismissed*, *Johnson v. Wetzel*, 2014 WL 888529 (M.D. Pa. 2014). We would respectfully submit that our decision to deny Defendant's Motion to Suppress Evidence and to admit the results of her December 26, 2015 BAC test did not constitute an abuse of discretion.

The appellate standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. *Commonwealth v. McConnell*, 2017 WL 1382797 * 2 (Pa. Super. 2017)(*quoting Commonwealth v.*

*Eichinger*, 915 A.2d 1122, 1134 (Pa. 2007), *reconsideration denied* (March 26, 2007), *cert. denied, Eichinger v. Pennsylvania*, 128 S.Ct. 211 (U.S. Pa. 2007)(citation omitted). When reviewing the ruling of the suppression court, the appellate courts must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. *Id.* Where the record supports the findings of the suppression court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. *Id.* We would respectfully submit that the foregoing factual findings are supported by the record and that, for all of the reasons discussed above, we have drawn the correct legal conclusions on the basis of those facts. Consequently, it is our position that Defendant's first appellate issue at docket number 15-CR-0001053-2016 (the stipulated fact non-jury trial/December 26, 2015 DUI case) has no merit and should, respectfully, be denied and dismissed.

We will now address the second issue raised at docket number 15-CR-0001053-2016, which is the issue concerning the alleged excessiveness of Defendant's sentence and our alleged failure to give "appropriate" weight to various factors Defendant considers should have operated to reduce her sentence. The issues raised in this claim are common to all four (4) dockets.

A challenge to an alleged excessive sentence, including a challenge based on the grounds that the sentencing court failed to adequately consider certain allegedly mitigating factors, is a challenge to the discretionary aspects of a sentence. *Commonwealth v. Ahmad*, 961 A.2d 884 (Pa. Super. 2008)(challenge to alleged

~ 36 ~

excessiveness of sentence is a challenge to the discretionary aspects of a sentence); *Commonwealth v. Urrutia*, 653 A.2d 706 (Pa. Super. 1995), *appeal denied*, 661 A.2d 873 (Pa. 1995)(a challenge based on the sentencing court's alleged failure to adequately consider certain mitigating factors is a challenge to the discretionary aspects of a sentence). A challenge to the sentencing court's decision to run sentences consecutively as opposed to concurrently is likewise a challenge to the discretionary aspects of sentencing. *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010). Issues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings; absent such efforts, an objection to a discretionary aspect of a sentence is waived. *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010); *Commonwealth v. Ahmad*, 961 A.2d 884 (Pa. Super. 2008). Defendant raised her appellate issue in a post-sentence motion filed to each of the above-captioned dockets and therefore her issue is preserved for appellate review. However, this does not mean that this Honorable reviewing Court must necessarily consider it on the merits.

A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute. 42 Pa. C.S.A. § 9781(b)("The defendant or the Commonwealth may file a petition for allowance of appeal of the discretionary aspects of a sentence for a felony or a misdemeanor to the appellate court that has initial jurisdiction for such appeals."); *Commonwealth v Disalvo*, 70 A.3d 900 (Pa. Super. 2013); *Commonwealth v. Ahmad*, 961 A.2d 884 (Pa. Super. 2008).

Before an appellate court may reach the merits of a challenge to the discretionary aspects of a sentence, it must engage in a four-part analysis to determine: (1) whether the appeal is timely; (2) whether the defendant preserved her issue; (3) whether the defendant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question as to whether the sentence is appropriate under the Sentencing Code. *Commonwealth v. Disalvo*, 70 A.3d 900 (Pa. Super. 2013). If the appeal satisfies each of these four (4) requirements, the appellate court will then proceed to decide the substantive merits of the case. *Commonwealth v. Disalvo*, 70 A.3d 900 (Pa. Super. 2013).

We have already demonstrated that Defendant's Notice of Appeal was timely filed. We have also already demonstrated that Defendant has preserved her issue for purposes of appeal. We are not in a position to determine whether Defendant's brief includes a concise statement of the reasons relied upon for allowance of appeal, as we do not have a copy of Defendant's brief; consequently, we must most respectfully leave that question in the hands of this Honorable reviewing Court for resolution, although we can certainly state that the Defendant timely filed a Concise Statement setting for her reasons for appeal with the undersigned pursuant to Pa. R.A.P. 1925(b). Thus, the only question left to address is whether the Defendant has raised a substantial question that her sentence is inappropriate under the Sentencing Code.

"Allowance of appeal may be granted at the discretion of the appellate court where it appears that there is a substantial question that the sentencing imposed is not

~ 38 ~

appropriate under this chapter." 42 Pa. C.S.A. § 9781(b); *Commonwealth v. Ahmad*, 961 A.2d 884 (Pa. Super. 2008)(when challenging the discretionary aspects of the sentence imposed, an appellant must present a substantial question as to the inappropriateness of the sentence). As to what constitutes a substantial question for purposes of determining whether the discretionary aspects of a sentence may be appealed, the appellate court does not accept bald assertions of sentencing errors; an appellant must articulate the reasons the sentencing court's actions violated the Sentencing Code. *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010). A substantial question exists only when the appellant advances a colorable claim that the sentencing judge's actions were either (1) inconsistent with a specific provision of the Sentencing Code or (2) contrary to the fundamental norms which underlie the sentencing process. *Commonwealth v. Caldwell*, 117 A.3d 763 (Pa. Super. 2015), *appeal denied*, 126 A.3d 1282 (Pa. 2015); *Commonwealth v. Disalvo*, 70 A.3d 900 (Pa. Super. 2013); *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010). The Superior Court examines an appellant's Rule 2119(f) Statement to determine whether a substantial question exists. *Commonwealth v. Ahmad*, 961 A.2d 884 (Pa. Super. 2008). "The Superior Court's inquiry must focus on the *reasons* for which the appeal is sought, in contrast to the *facts* underlying the appeal, which are necessary only to decide the appeal on the merits." *Commonwealth v. Ahmad*, 961 A.2d 884 (Pa. Super. 2008). As this Honorable reviewing Court recently stated,

> In determining whether a substantial question exists, [the appellate court] does not examine the merits of whether the sentence is actually excessive. Rather, [the appellate court] look[s] to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable. Concomitantly, the

> substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

*Commonwealth v. Caldwell*, 117 A.3d 763, 769 (Pa. Super. 2015), *appeal denied*, 126 A.3d 1282 (Pa. 2015)(*quoting Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa. Super. 2013), *reargument denied* (November 21, 2013), *appeal denied*, 91 A.3d 161 (Pa. 2014)(internal citations omitted)). "'The appellate court cannot look beyond the statement of questions presented and the prefatory [Rule] 2119(f) Statement to determine whether a substantial question exists.'" *Commonwealth v. Shorter*, 2015 WL 6114594 (Pa. Super. 2015)(*quoting Commonwealth v. Christine*, 78 A.3d 1, 10 (Pa. Super. 2013)(*en banc*)(OISA), *aff'd*, 125 A.3d 394 (Pa. 2015)(citation omitted)). The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Disalvo*, 70 A.3d 900 (Pa. Super. 2013); *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010).

There is a plethora of decisional law holding that a claim that a sentence is excessive because the sentencing court failed to give "appropriate" weight, i.e., the weight that the Defendant wished the sentencing court would give, to particular allegedly mitigating factors does not raise a substantial question for purposes of appeal. *See Commonwealth v. Baez*, 2017 WL 781690 (Pa. Super. 2017); *Commonwealth v. Nichols*, 2016 WL 7048825 (Pa. Super. 2016); *Commonwealth v. Mathis*, 2016 WL 6635076 (Pa. Super. 2016); *Commonwealth v. Sipes*, 2016 WL 4965065 (Pa. Super. 2016); *Commonwealth v. Salmond*, 2015 WL 7185467 (Pa. Super. 2015); *Commonwealth v. Caldwell*, 117 A.3d 763 (Pa. Super. 2015), *appeal denied*, 126 A.3d 1282 (Pa. 2015);

~ 40 ~

*Commonwealth v. Brown*, 2015 WL 6167466 (Pa. Super. 2015); *Commonwealth v. Zirkle*, 107 A.3d 127 (Pa. Super. 2014), *reargument denied* (February 17, 2015), *appeal denied*, 117 A.3d 297 (Pa. 2015); *Commonwealth v. Parker*, 2014 WL 10988526 (Pa. Super. 2014), *appeal denied*, 94 A.3d 1009 (Pa. 2014); *Commonwealth v. Disalvo*, 70 A.3d 900 (Pa. Super. 2013); *Commonwealth v. Fries*, 2013 WL 11261997 (Pa. Super. 2013); *Commonwealth v. Griffin*, 65 A.3d 932 (Pa. Super. 2013), *appeal denied*, 76 A.3d 538 (Pa. 2013); *Commonwealth v. Ratushny*, 17 A.3d 1269 (Pa. Super. 2011), *application for writ of habeas corpus held in abeyance by Ratushny v. Bickel*, 2014 WL 4198305 (E.D. Pa. 2014), *habeas corpus denied*, 2017 WL 1406764 (E.D. Pa. 2017), *appeal filed*, *Richard Ratushny v. Superintendent Huntingdon S.C.I., et al.* (3rd Cir. Pa. May 8, 2017); *Commonwealth v. Rhoades*, 8 A.3d 912 (Pa. Super. 2010), *appeal denied*, 25 A.3d 328 (Pa. 2011), *cert. denied*, *Rhoades v. Pennsylvania*, 132 S.Ct. 1746 (U.S. Pa. 2012), *habeas corpus denied*, *Rhoades v. Superintendent*, 2015 WL 4976745 (E.D. Pa. 2015), *certificate of appealability denied* (3rd Cir. Pa. 15-3257)(March 18, 2016); *Commonwealth v. Johnson*, 961 A.2d 877 (Pa. Super. 2008), *appeal denied*, 968 A.2d 1280 (Pa. 2009); *Commonwealth v. Cannon*, 954 A.2d 1222 (Pa. Super. 2008), *appeal denied*, 964 A.2d 893 (Pa. 2009); *Commonwealth v. Lewis*, 911 A.2d 558 (Pa. Super. 2006); *Commonwealth v. Hanson*, 856 A.2d 1254 (Pa. Super. 2004); *Commonwealth v. Coolbaugh*, 770 A.2d 788 (Pa. Super. 2001); *Commonwealth v. Petaccio*, 764 A.2d 582 (Pa. Super. 2000), *overruled on other grounds by Commonwealth v. Mouzon*, 812 A.2d 617 (Pa. 2002); *Commonwealth v. Wellor*, 731 A.2d 152 (Pa. Super. 1999); *Commonwealth v. Bershad*, 693 A.2d 1303 (Pa. Super. 1997), *reargument denied* (June 16, 1997), *disapproved of on other grounds by Commonwealth v. Dixon*, 985 A.2d 720

(Pa. 2009); *Commonwealth v. Barzyk*, 692 A.2d 211 (Pa. Super. 1997); *Commonwealth v. Cruz-Centeno*, 668 A.2d 536 (Pa. Super. 1995), *appeal denied*, 676 A.2d 1195 (Pa. 1996), *habeas corpus denied, Cruz-Centeno v. Zimmerman*, 1997 WL 16626 (E.D. Pa. 1997), *aff'd, Cruz v. Commonwealth of Pennsylvania*, 142 F.3d 427 (3rd Cir. Pa. 1998); *Commonwealth v. Hoag*, 665 A.2d 1212 (Pa. Super. 1995); *Commonwealth v. Byrd*, 657 A.2d 961 (Pa. Super. 1995); *Commonwealth v. Dalberto*, 648 A.2d 16 (Pa. Super. 1994), *appeal denied*, 655 A.2d 983 (Pa. 1995), *cert. denied, Dalberto v. Pennsylvania*, 116 S.Ct. 75 (U.S. Pa. 1995), *rehearing denied*, 116 S.Ct. 550 (U.S. Pa. 1995); *Commonwealth v. Jones (Albert)*, 637 A.2d 1001 (Pa. Super. 1994); *Commonwealth v. Jones (Charles R.T.)*, 613 A.2d 587 (Pa. Super. 1992), *appeal denied*, 629 A.2d 1377 (Pa. 1993), *overruled on other grounds by Commonwealth v. Mouzon*, 812 A.2d 617 (Pa. 2002); *Commonwealth v. Mobley*, 581 A.2d 949 (Pa. Super. 1990); *Commonwealth v. Minott*, 577 A.2d 928 (Pa. Super. 1990); *Commonwealth v. Frank*, 577 A.2d 609 (Pa. Super. 1990), *appeal denied*, 584 A.2d 312 (Pa. 1990), *denial of post-conviction relief aff'd*, 640 A.2d 904 (Pa. Super. 1994), *appeal denied*, 649 A.2d 668 (Pa. 1994); *Commonwealth v. Smith*, 575 A.2d 150 (Pa. Super. 1990). This is because "[a]n allegation that the sentencing court did not adequately consider various factors is, in effect, a request that [the appellate court] substitute its judgment for that of the lower court in fashioning a defendant's sentence." *Commonwealth v. Ratushny*, 17 A.3d 1269 (Pa. Super. 2011), *application for writ of habeas corpus held in abeyance by Ratushny v. Bickel*, 2014 WL 4198305 (E.D. Pa. 2014), *habeas corpus denied*, 2017 WL 1406764 (E.D. Pa. 2017), *appeal filed, Richard Ratushny v. Superintendent Huntingdon S.C.I., et al.* (3rd Cir. Pa. May 8, 2017)(*citing Commonwealth v. Griffin*, 804 A.2d 1, 9 (Pa. Super.

2002), *appeal denied*, 868 A.2d 1198 (Pa. 2005), *cert. denied*, *Griffin v. Pennsylvania*, 125 S.Ct. 2984 (U.S. Pa. 2005)(*citing Commonwealth v. Williams*, 562 A.2d 1385 (Pa. Super. 1989)(*en banc*))). "Such a challenge goes to the weight accorded the evidence and will not be considered absent extraordinary circumstances." *Commonwealth v. Urrutia*, 653 A.2d 706 (Pa. Super. 1995), *appeal denied*, 661 A.2d 873 (Pa. 1995). The appellate courts are reluctant to substitute their own judgment for that of the sentencing court because of the recognition that "'the sentencing court . . . is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime.'" *Commonwealth v. Ahmad*, 961 A.2d 884, 887 (Pa. Super. 2008)(*quoting Commonwealth v. Fish*, 752 A.2d 921, 923 (Pa. Super. 2000)(citation and internal quotations omitted)); *Commonwealth v. Minott*, 577 A.2d 928 (Pa. Super. 1990). *See also Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010)(the rationale behind broad discretion with regard to sentencing and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it). For this reason, the appellate courts give great deference to the sentencing court's judgment. *Commonwealth v. Ahmad*, 961 A.2d 884, 887 (Pa. Super. 2008).

In accordance with the authority cited above, we would respectfully submit that Defendant has failed to present a substantial question warranting appellate review of the merits of her appeal. We note, as the Pennsylvania Superior Court did in *Commonwealth v. Salmond*, 2015 WL 7185467 (Pa. Super. 2015), wherein the Court

~ 43 ~

determined that a defendant's claim that his sentence was manifestly excessive because the trial court failed to weigh certain factors more heavily than others did not raise a substantial question for purposes of appeal, that Defendant does not claim in her appeal that this court *failed* to consider the allegedly mitigating factors she lists in her concise Statement. "Indeed, when combined with a claim of manifest excessiveness, that assertion, as opposed to a challenge to the weight the court assessed among the factors it considered, may raise a substantial question. *See Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014), *appeal denied*, 105 A.3d 736 (Pa. 2014)('an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question.')." *Commonwealth v. Salmond*, 2015 WL 7185467 (Pa. Super. 2015). Nor is this a case in which the undersigned sentenced Defendant in the aggravated range without "adequately" considering allegedly mitigating factors. *Cf. Commonwealth v. Felmlee*, 828 A.2d 1105, 1107 (Pa. Super. 2003)(stating a substantial question is raised where appellant alleges the sentencing court imposed a sentence in the aggravated range without adequately considering mitigating circumstances). Instead, Defendant is only complaining that we did not, in our some-mandatory-but-all-still-standard-range sentences, for Defendant's fourth, fifth, sixth and seventh lifetime DUI convictions, all of which were committed while she was under supervision for a DUI in another state and, at least with respect to the last three, while she was out on bail and awaiting disposition of newly incurred charges, and in all of the cases, Defendant caused an accident, one of which resulted in a property damage enhancement, give "appropriate" weight to the allegedly mitigating factors she sets forth in her Concise Statement; that is, she contests our manner of allocating the weight we

~ 44 ~

attributed to the various factors we considered. This is a weight of the evidence argument and, as we stated above, the Superior Court will not substitute its judgment in this respect for that of the sentencing court absent extraordinary circumstances. No such circumstances have been pled here, nor do we find that any such extraordinary circumstances exist on the facts of record. Accordingly, we would respectfully submit that Defendant's claim that her sentence is excessive because this Court failed to give appropriate weight to the several allegedly mitigating factors she sets forth in her Concise Statement fails to raise a substantial question for purposes of triggering appellate review of the merits of her claim.[5]

---

[5] Similarly, to the extent that Defendant may argue that our decision to run some of her sentences consecutively as opposed to concurrently was error, we would respectfully submit that Defendant's argument fails to present a substantial question for purposes of triggering appellate review. *See Commonwealth v. Zirkle*, 107 A.3d 127 (Pa. Super. 2014), *reargument denied* (February 17, 2015), *appeal denied*, 117 A.3d 297 (Pa. 2015)(the statute governing sentencing affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed and a challenge to the imposition of consecutive rather than concurrent sentences does not present a substantial question regarding the discretionary aspects of sentencing as required to invoke the jurisdiction of the Pennsylvania Superior Court). Although it is true that a defendant may raise a substantial question that a sentence is not appropriate, so as to support an appeal challenging the discretionary aspect of her sentence, where she receives consecutive sentences within the Guideline ranges if the case involves circumstances where the application of the Guidelines would be clearly unreasonable, resulting in an excessive sentence, a bald claim of excessiveness due to the consecutive nature of the sentence, however, will not raise a substantial question. *Commonwealth v. Swope*, 123 A.3d 333 (Pa. Super. 2015); *Commonwealth v. Dodge*, 77 A.3d 1263 (Pa. Super. 2013), *reargument denied* (November 21, 2013), *appeal denied*, 91 A.3d 161 (Pa. 2014). *See also Commonwealth v. Christine*, 78 A.3d 1 (Pa. Super. 2013)(en banc)(OISA), *aff'd*, 125 A.3d 394 (Pa. 2015)(a generic claim that a sentence is excessive does not raise a substantial question for appellate review). Likewise, concerning Defendant's claim that her aggregate sentence is "manifestly unreasonable and excessive", taken alone, as we have already discussed it above in conjunction with her claim that we failed to give "appropriate" weight to various listed factors, Defendant's claim constitutes a bald generic claim of excessiveness which will not be deemed to raise a substantial question for purposes of triggering appellate review. *See Commonwealth v. Williams-Keyes*, 2016 WL 6277261 (Pa. Super. 2016)(claim that sentence was "clearly unreasonable" and "manifestly excessive and unreasonable" did not raise substantial question); *Commonwealth v. Christine*, 78 A.3d 1 (Pa. Super. 2013)(en banc)(OISA), *aff'd*, 125 A.3d 394 (Pa. 2015)(determining that claim that sentence was "manifestly unreasonable" did not raise a substantial question). Defendant's claim that his sentence is "manifestly unreasonable and excessive" does not identify with any specificity which particular provisions of the Sentencing Code or fundamental norms of the sentencing process are offended by this Court's sentencing decision. Because Defendant has failed to raise anything but a boilerplate claim of excessiveness, Defendant has failed to set forth a substantial question triggering appellate review. *See Commonwealth v. Williams-Keyes*, 2016 WL 6277261

Notwithstanding the foregoing authority, this Honorable reviewing Court has characterized "'prior decisions from this Court involving whether a substantial question has been raised by claims that the sentencing court 'failed to consider' or 'failed to adequately consider' sentencing factors'" as "'less than a model of clarity and consistency.'" *Commonwealth v. Caldwell*, 117 A.3d 763, 769 (Pa. Super. 2015), *appeal denied*, 126 A.3d 1282 (Pa. 2015)(*quoting Commonwealth v. Seagraves*, 103 A.3d 839, 842 (Pa. Super. 2014), *appeal denied*, 116 A.3d 604 (Pa. 2015)). Additionally, as we mention below, *infra* n. 5, a defendant may be deemed to raise a substantial question if she alleges that the Court's application of the Guidelines was "erroneous" or "clearly unreasonable" because the Court either did not interpret the Gudielines properly or because the case involves circumstances where the proper application of the Guidelines themselves "would be clearly unreasonable", 42 Pa. C.S.A. § 9781(c). See *Commonwealth v. Swope*, 123 A.3d 333 (Pa. Super. 2015)(a defendant may raise a substantial question that a sentence is not appropriate, so as to support an appeal challenging the discretionary aspect of his sentence, where he receives consecutive sentences within the Guidelines ranges if the case involves circumstances where the application of the Guidelines would be clearly unreasonable, resulting in an excessive sentence); *Commonwealth v. Dodge*, 77 A.3d 1263 (Pa. Super. 2013), *reargument denied* (November 21, 2013), *appeal denied*, 91 A.3d 161 (Pa. 2014)(same proposition). There is also authority, in "extreme" circumstances, for concluding that an objection to the imposition of consecutive as opposed to concurrent sentences presents a substantial

---

(Pa. Super. 2016)(where the sentences are within the applicable Guideline ranges, the sentencing judge's decision to impose consecutive sentences, standing alone, does not present a substantial question).

~ 46 ~

question. *See Commonwealth v. Caldwell*, 117 A.3d 763 (Pa. Super. 2015), *appeal denied*, 126 A.3d 1282 (Pa. 2015)(the imposition of consecutive rather than concurrent sentences will present a substantial question warranting appellate review of the discretionary aspect of a sentence in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment).[6]    In light of this Honorable reviewing Court's characterization of prior precedent, the apparent existence of a counterpoint to nearly every proposition that may be adduced regarding what qualifies as a substantial question, and/or in the event that this Honorable reviewing Court simply disagrees with our conclusion that Defendant has failed to raise a substantial question, we will in the alternative address the merits of Defendant's claim.

When sentencing a defendant a court has several options. As provided for by section 9721(a) of the Sentencing Code, 42 Pa. C.S.A. § 9701 *et seq.*,

> [i]n determining the sentence to be imposed, the court shall, except as provided in subsection (a.1), consider and select one or more of the following alternatives, and may impose them consecutively or concurrently:

---

[6] *See also Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014), *appeal denied*, 105 A.3d 736 (Pa. 2014), *denial of post-conviction relief aff'd*, 2017 WL 3115001 (Pa. Super. 2017)(for text, *see* 2017 WL 1372851 (Pa. Super. 2017)(*quoting Commonwealth v. Mastromarino*, 2 A.3d 581, 587 (Pa. Super. 2010), *appeal denied*, 14 A.3d 825 (Pa. 2011))("The key to resolving the preliminary substantial question inquiry is whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case.'"). For all of the reasons discussed in this Opinion, we would respectfully submit that our decision to structure Defendant's sentence such that the non-summary offenses were run consecutively to one another for an aggregate term of three (3) to six (6) years' incarceration, particularly in light of the fact that Defendant is a recidivist DUI offender with seven (7) lifetime offenses by her mid-thirties, the last four (4) of which occurred while she was on supervision for a DUI in another state and the last three of which occurred while she was out on bail here and awaiting disposition on prior offenses, and all of which resulted in accidents (one resulting in a property damage enhancement), for which Defendant was at fault, does not, under all these circumstances, raise her aggregate sentence on its face or otherwise to a level that is excessive.

(1) An order of probation.

(2) A determination of guilt without further penalty.

(3) Partial confinement.

(4) Total confinement.

(5) A fine.

(6) County intermediate punishment.

(7) State intermediate punishment.

42 Pa. C.S.A. § 9721(a). In making this selection, the Sentencing Code offers general standards with respect to the imposition of sentence which require the sentence to be "'consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.'" *Commonwealth v. Ahmad*, 961 A.2d 884, 888 (Pa. Super. 2008)(*quoting* 42 Pa. C.S.A. § 9721(b); *Commonwealth v. Walls*, 926 A.2d 957, 962 (Pa. 2007)). When imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant; in particular, the court should refer to the defendant's prior criminal record, her age, personal characteristics, and her potential for rehabilitation. *Commonwealth v. Griffin*, 65 A.3d 932, 937 (Pa. Super. 2013), *appeal denied*, 76 A.3d 538 (Pa. 2013); *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010). "Where the sentencing court had the benefit of a pre-sentence investigation report ("PSI"), the Superior Court assumes the sentencing court 'was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.'" *Commonwealth v. Griffin*, 65 A.3d 932, 937 (Pa. Super. 2013), *appeal denied*, 76 A.3d 538 (Pa. 2013)(*quoting Commonwealth v. Devers*, 546

~ 48 ~

A.2d 12, 18 (Pa. 1988)). Although Pennsylvania's sentencing system stands for individualized sentencing, the court is not required to impose the "minimum possible" confinement permitted by law. *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010).

Defendant claims that running her non-summary convictions consecutive to one another resulting in an aggregate three (3) to six (6) year state sentence for a fourth, fifth, sixth, and seventh DUI by the age of thirty-five (35) is manifestly unreasonable and excessive because the sentence fails to give "appropriate weight" to her childhood abuse, her history of domestic abuse, her health problems, her serious alcohol addiction, her underlying mental health concerns, her rehabilitative needs, her remorse, her age, and her accomplishments and dedication to counseling while incarcerated. In essence, Defendant is seeking a volume discount for incurring four (4) DUI"s in the span of one (1) year, while she was on supervision for a previous DUI in another state and, with respect to the last three (3), while she was out on bail for previous DUI's and was, as well, noncompliant with reporting, both to the bail agency and by her failure to disclose to the Court one of her subsequent offenses, and failing to appear in court, because she, like others in this world, many of whom do not commit criminal offenses, has experienced hardship and trauma in her life. While we are not unsympathetic to her plight, the pain she has experienced in her own life does not give her an excuse or justification to inflict pain in the lives of others or to place innocent persons in jeopardy of life, limb and/or property. When we sentenced Defendant, we had the benefit of a Pre-Sentence Report, which discussed her history of child abuse, her history of domestic abuse, her health problems, her serious alcohol addiction (which is evident on its own from her criminal

history) and her underlying mental health concerns. We had a sentencing hearing at which her counsel went to great lengths to apprise the Court of the circumstances of the Defendant's life and the kind of person that Defendant is when she is sober. Defendant spoke at sentencing to her own rehabilitative efforts and her genuine remorse for what she has done and the risk she has presented to herself and others. By virtue of the evidence presented at her sentencing hearing and our familiarity with Defendant's Pre-Sentence Report, we not only are deemed to have considered all of the factors she listed on her Concise Statement, but we did in fact consider every one. Understanding all of the foregoing personal characteristics of the Defendant, we were aware of her rehabilitation needs. We know that inpatient treatment has not alleviated her addiction issues. We know from the Pre-Sentence Report that she underreports her alcohol consumption. (*See* Pre-Sentence Report, 3/1/16, at 6).[7] All four (4) of her latest DUI's involved situations where Defendant struck either vehicles driven by third parties or has struck the property of others which has, in at least one case, resulted in actionable damage to this property. Her repetitive drinking and driving makes her a ticking time

---

[7] Defendant's Pre-Sentence Report indicates as follows.

> In 2006, [Defendant] reports having completed Mirmont and Concept 90 successfully for her dependence to alcohol. She states that she would drink beer and wine weekly 2 or 3 times per week. She denies any recent alcohol use. She states that she last used alcohol in July 2015. According to her probation records, the defendant had been drinking nearly a case of beer on a daily basis prior to her entering inpatient treatment. In January 2016, the defendant was warned by her counselor at Guadenzia [sic] after she had given an adulterated sample for testing. She claims that she drank some "cough syrup. When asked about the adulterated urine sample she said "I don't even know what adulterated means." She added after it was explained to her that she "didn't know you could do that to effect a sample."

(Deft.'s Pre-Sentence Report, 3/1/16, at 6).

bomb in terms of the safety of others and herself and she knows it. (*See* Verbal Guilty Plea Colloquy Transcript, 8/5/16, N.T. 18 ["THE COURT: This alcohol, you're fortunate you didn't kill someone or yourself. NICOLE ELINSKY: Believe me, I understand."]). She has been non-complaint with her probation and with her bail, and not simply in a technical sense; she failed to timely apprise the Court or her then-counsel of her December 26, 2015 offense; she failed to appear for a court proceeding without giving notice to the Court; and has on a couple of occasions, including the one forming the basis of this appeal, incredibly blamed the presence of alcohol in her system as deriving from her ingestion of Nyquil or cough syrup, all of which gives this Court pause, notwithstanding her surface appearance and professions of sincerity, concerning whether she has fully accepted responsibility for her actions and her addiction. Consequently, it was, and remains, our opinion that total confinement is necessary for this Defendant to protect the public, account for the gravity of her offenses in terms of their impact on the life of the victim(s) and the community, and accommodate her significant rehabilitative needs.[8] She has received ARD previously, she has been incarcerated for a few days in

---

[8] We placed our reasoning for sentencing Defendant as we did on the record at the close of her Sentencing Hearing. We stated,

> THE COURT: I appreciate everyone's comments here. The Court's required to follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and/or the community. I notice that there are no true—I guess the community would be considered the victim. The cars were tapped, but no injuries.
>
> . . .
>
> I have to consider her rehabilitative needs. I have to consider the guidelines. I obviously have to consider the mandatory provisions that all these cases have. and then I have to consider the factors in the sentencing code and balance the background, character and circumstances of this defendant with the

jail, the most being fifteen (15) days in 2006, she has done private in-patient treatment, and these remedial efforts have had no effect on her abusive relationship with alcohol. It is time for a wake-up call. We sentenced her in the standard range on each of her offenses. Run concurrently, they would be county sentences. However, she has already had opportunities at the county level. They have failed. Further, running these sentences concurrently would depreciate the severity of the crimes and Defendant's culpability and addiction in both the eyes of the Defendant and the eyes of the community. The equities of the situation do not favor a mitigated sentence. Indeed, there was more than ample support on the record for an aggravated range sentence, but Defendant received mercy, in consideration of her troubled past, in that we did not sentence her in the aggravated range on any of the above-captioned dockets. Instead, we sentenced her consecutively in the standard range on each of her non-summary offenses. She is not entitled to a volume discount. That the sentences as structured

> circumstances of the crime, whether there is a need to incarcerate her to prevent future offenses by her, as well as the possibility of her rehabilitation. I considered and read the PSI. I read everything that defense counsel provided me.
>
> It's a very unusual case to have this many DUIs coming from one person at one time. It's a rarity in my time on the bench. In doing the balancing, I'm going to stay within the standard range of the guidelines. I imagine I could easily find aggravation due to the circumstances here. I also imagine, if I did the balancing, considering her difficult life, as I did read, and how that has impacted her, it's obvious it had a negative impact on her. But what's been exhibited here is she's dangerous to the community and herself, repetitive drinking and driving pattern established here. Whether she's successful in rehabilitation, time will tell. She obviously made efforts as evidenced by what was provided to the Court by defense counsel. She's severely in need of treatment. She committed some of these offenses while on bail, while awaiting sentencing. I think it indicates the degree of her problems. Her life at the time here seemed to be out of control. She was spinning wildly. The pattern here is dangerous to the community.

(Sentencing Hearing Transcript, 2/15/17, N.T. 33-36).

result in State Prison time is both necessary and appropriate. There are more opportunities in State Prison for Defendant to rehabilitate herself. She will be away from alcohol for a significant period of time. She will be away from the people in her life who have abused her. She will have greater access in the State criminal justice system to a wider variety of programs that will be able to accommodate her spectrum of physical and mental health issues. If she is truly committed to vanquishing her demons, she will take advantage of the classes and programs at the State Prison to emerge from the time she spends there not only a better person than she was before she went in, but one who is able to realize the full potential of the significant life she will have left at the end of her term and contribute productively to the betterment of herself and her community.

Under 42 Pa. C.S.A. § 9781, an appellate court is empowered to vacate a sentence and remand a case to the sentencing court with instructions if it finds:

> (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
>
> (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or
>
> (3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

42 Pa. C.S.A. § 9781(c). "In all other cases the appellate court shall affirm the sentence imposed by the sentencing court." 42 Pa. C.S.A. § 9781(c). We would respectfully submit for all of the foregoing reasons that our sentences in the above-captioned matters do not offend any one (1) of the three (3) prongs described above as bases for vacating a judgment of sentence. Subsection 9781(c)(3) is not applicable because we did not sentence outside of the statewide Sentencing Guidelines. As for the other subsection of

section 9781(c), it is our position that the facts of record establish that we did not apply the statewide Sentencing Guidelines erroneously, and that these cases do not involve circumstances where the application of the Guidelines is clearly unreasonable. Consequently, we would respectfully submit that affirming Defendant's Judgments of Sentence in the above-captioned matters would be appropriate under the circumstances of these cases.

Sentencing is a matter vested within the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of that discretion. *Commonwealth v. Raven*, 97 A.3d 1244 (Pa. Super. 2014), *appeal denied*, 105 A.3d 736 (Pa. 2014), *denial of post-conviction relief aff'd*, 2017 WL 3115001 (Pa. Super. 2017)(for text, *see* 2017 WL 1372851 (Pa. Super. 2017)). In the sentencing context, an abuse of discretion is not shown merely by an error in judgment, and instead, the Defendant must establish, by reference to the record, that the sentencing court either ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. *Commonwealth v. Griffin*, 65 A.3d 932 (Pa. Super. 2013), *appeal denied*, 76 A.3d 538 (Pa. 2013). We would respectfully submit for all of the reasons aforestated that Defendant has failed to meet her burden of proving that this Court abused its discretion by sentencing Defendant in the manner described above. Consequently, it is our position that Defendant's challenges to the propriety of her sentences have no merit and should, respectfully, be denied and dismissed.

For all of the foregoing reasons, we would respectfully submit that Defendant's appeal is without merit. We would respectfully request that this Honorable

~ 54 ~

reviewing Court deny and dismiss Defendant's appeal and affirm her Judgments of Sentence.

BY THE COURT:

_____8/16/12_____       _____
Date                     Anthony A. Sarcione,         J.

Certified From The Record
This ___18___ Day of ___Aug___ 20_12_
_____
Deputy Clerk of Common Pleas Court